A89A1905. HIBBERT v. THE STATE.
(393 SE2d 96)

DEEN, Presiding Judge.

Lascelles Hibbert was convicted of trafficking in cocaine in an amount exceeding 400 grams in weight. Driving north from Florida, he was stopped for improper tag display near Richland, Georgia. During the brief stop, the state trooper ascertained the car was a rental car and asked Hibbert where he was going; Hibbert stated he was driving to Fort Benning, Georgia, to visit a friend, but he could not name the friend nor give an address or phone number, or a place of contact. His suspicions thus aroused, the trooper asked permission to search the vehicle, and Hibbert agreed.

When the trooper looked in the trunk, he noticed that the carpet appeared to have been tampered with. He pulled back the carpet and discovered a taped brown-wrapped package which contained a substance he field-tested to be cocaine. Hibbert disavowed all knowledge of the package and its contents.

Thereafter, when Hibbert was arrested and given a *Miranda* warning, he did not speak further until taken to the station. Later, at the station, GBI Agent Bracewell conducted an interview with Hibbert. At first Hibbert signed a waiver of rights, but then Hibbert stated he wanted an attorney before he spoke. The agent told Hibbert the interview was terminated, and then proceeded to ask him routine questions incident to completing an arrest report. He asked biographical questions about Hibbert and for the names and addresses of Hibbert's family members. According to the agent, appellant "hesitated when I started asking him his family's names and addresses and that's when I noted that he seemed concerned in giving me that answer . . . he just seemed like something was weighing heavily upon

him and that's when he said he'd like to speak to [us] in confidence." He said something like, "Can I tell y'all something? Can I talk to y'all[?]" and he seemed scared. Even though the agent again warned Hibbert of his right to an attorney, Hibbert insisted on talking; "he stated the reason he wanted to [talk] was he was concerned with his family's safety in Miami."

Although he still disavowed any knowledge of what was in the package, Hibbert revealed the name (Sharpe) and location of his intended contact. Subsequently Hibbert, wearing a body bug, "delivered" the package to Sharpe, who was thereupon arrested. All of these facts were admitted in evidence.

Hibbert appeals his conviction on grounds that the continued interrogation was constitutionally illegal, and that the resulting confession and statements were illegally admitted. *Held*:

After a suspect in custody has invoked his right to counsel, subsequent interrogation is strictly prohibited unless initiated by the suspect. *Michigan v. Jackson*, 475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1986). However, it must be emphasized that the prohibition is against interrogation, not all communication between suspect and police. The routine inquiry concerning identification of the appellant's family members, having nothing to do with the criminal investigation, cannot reasonably be considered interrogation.

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U. S. 291, 301-302 (100 SC 1682, 64 LE2d 297) (1980).

In this case, following termination of the interrogation, the officer proceeded to complete a standard form used by the department as an arrest record, which inquired as to names and addresses of family members. Arrest records are mandatory under OCGA § 17-4-27, and routinely inquiring about names and addresses of family members

serves two very reasonable purposes: (1) it identifies someone to contact in case of medical emergency; and (2) it provides a reference point in case the defendant escapes. This inquiry was normally attendant to arrest and custody, and had absolutely nothing to do with the interrogation regarding the criminal offense under investigation. Accordingly, Hibbert's subsequent, self-initiated statement was not unlawfully obtained.

*Judgment affirmed. McMurray, P. J., Banke, P. J., Pope and Beasley, JJ., concur. Carley, C. J., Birdsong, Sognier and Cooper, JJ., dissent.*

BIRDSONG, Judge, dissenting.

The majority concludes that the intrusive questioning of appellant, after he had requested representation by counsel, merely constituted a form of routine question designed to perfect the information necessary to complete an arrest record. OCGA § 17-4-27. I disagree. Contrary to the assertions of the majority, the posing of personal questions requiring appellant to reveal the names and addresses of relatives was neither essential nor routine in the manner in which it impacted upon appellant. While such questioning may well have provided information for the purposes the majority states, it is equally likely that it would provide leads for further criminal investigation should the police elect to transmit such information as criminal intelligence to other police agencies, and also could cause information to be revealed which could place innocent family members in jeopardy of their safety from a member of the ever-growing criminal drug distribution community. As stated by the majority, "the definition of interrogation can extend only to words or actions on the part of police officers that [the police] *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U. S. 291, 301-302 (100 SC 1682, 64 LE2d 297). The police *should have known* that asking personal questions to a frightened suspect, particularly one who has attempted to avail himself of his right to counsel thereby signifying that he believed himself in need of the sage advice of legal counsel, about the identification and location of his family, would be likely to elicit an incriminating response by the suspect. Clearly, such a response would be reasonably likely to protect appellant's family members either from threat of their safety from the criminal drug dealing element or from the threat of criminal investigation, or both. In this regard, it is worthy of note that *the police made no genuine effort to ease appellant's concern by explaining to him why they were asking such personal questions.* Rather, they proceeded in a manner which, in effect capitalized to the maximum upon the psychological pressures and fears being heaped upon appellant.

Accordingly, the questions about his wife, parents, and siblings in

this case were not such "routine incidents of the custodial relationship" as to supervene his right to remain silent. See *Oregon v. Bradshaw*, 462 U. S. 1039, 1045 (103 SC 2830, 2835, 77 LE2d 405). Clearly initiating questions regarding close family members was a means of "weighing down" upon appellant, and in fact, caused him to immediately become nervous and upset, and frightened for the safety of his family from some threat. The questioning obviously broke down appellant's determination to remain silent *before* he could consult with an attorney as he had lawfully and unequivocally requested. To a suspect who has "indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." *Arizona v. Roberson*, 486 U. S. 675, 686 (108 SC 2093, 100 LE2d 704). After the request to remain silent, any questioning considered to be necessary should be subject to the greatest restraint.

I find no difficulty in this case in determining that the continued interrogation was in violation of appellant's constitutional rights, and that all the statements and confessions thereby obtained should have been suppressed, pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694); see *Rhode Island v. Innis*, supra at 301. And, under the operative circumstances of this case, it cannot be said that the illegally admitted evidence did not affect the jury's verdict so as to be harmless either beyond a reasonable doubt (as required in cases of violations of constitutional magnitude) or under the reasonable probability test of *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) and *Hamilton v. State*, 239 Ga. 72, 77 (235 SE2d 515). The admissible evidence of record does not so overwhelmingly prove appellant's guilt in this case, that we can sustain the error as harmless in the face of the admission into evidence of appellant's illegally obtained confession.

I respectfully dissent. I am authorized to state that Chief Judge Carley, Judge Sognier, and Judge Cooper join in this dissent.

DECIDED MARCH 16, 1990 —
REHEARING DENIED MARCH 29, 1990 —

*J. Michael Greene*, for appellant.
*John R. Parks, District Attorney*, for appellee.