A90A1245. FREESE v. THE STATE.
(396 SE2d 922)

McMURRAY, Presiding Judge.

Defendant was indicted for 20 counts of theft by taking. The case was tried before a jury and the evidence showed that defendant was a principal in fraudulent sales transactions which duped victims into giving up thousands of dollars for home solar energy systems which were never delivered or installed.

More specifically, the State proved that defendant was the "President" of "Solcoa Sales and Marketing" (Solcoa), a "high pressure-type" marketing scheme for home solar energy units. Defendant conducted business out of a metropolitan Atlanta office building and commanded Solcoa's "operations," directing a sales staff and organizing telephone solicitations and sales seminars.

The victims, in the case sub judice, were attracted to Solcoa sales seminars through promises of "free" vacations and gifts and, during these seminars, Solcoa sales representatives gave the victims false and exaggerated information regarding the function and benefits of home solar energy units. The sales representatives emphasized quick sales and offered some of the victims special one-day pricing to persuade them to make immediate orders for home solar energy units.

The victims ordered home solar energy units during Solcoa sales seminars and they were all required to give security deposit checks to secure the transactions. (A former Solcoa employee testified that down payment checks were immediately taken to the payors' banks

and " 'hammer[ed],' " i.e., exchanged for a cashier's check.) Most of the victims took advantage of on-the-spot financing to fund the transactions and some of the victims obtained financing through outside lenders. However, they all turned the loans proceeds over to Solcoa in exchange for Solcoa's promise to deliver and install solar energy equipment. These promises were never kept and Solcoa closed its operation in December of 1985. The State's evidence disclosed that defendant stayed with Solcoa "as long as he could get something out of it[; he] got something like a hundred thousand or something like that, and he took the money and left when it got too hot."

Defendant was found guilty on 15 counts of the indictment and this appeal followed the denial of his motion for new trial. *Held*:

1. Defendant first contends the trial court erred in failing to grant his motion for mistrial after a State's witness improperly placed his character in issue. The pertinent portion of the trial transcript reveals the State's redirect examination of a former Solcoa employee. The testimony was as follows:

"Q. [Defense counsel] asked you about the fact that [defendant] was not on any signature lines of any checking accounts. Was he on any — was his name on anything at Solcoa Sales and Marketing? A. No, sir. Q. And did you ever ask him about that — or anybody about that? A. I asked him about when I was doing the tax forms, trying to get the State tax I.D. number. I asked if I needed it to put it in all three principals' names. Q. And what did he say? A. He told me, 'No,' that because he had a record that they did not do that. Q. All right, ma'am. A. I accepted that. Q. Did he tell you — did he say — in other words, there was a reason for it? A. Yes, sir. Q. That's all I have. Thank you."

Defendant declined further cross-examination and this witness was excused. Defense counsel then moved for a mistrial, arguing that the witnesses' "mention of a record of [defendant] — which is an obvious connotation to a criminal record . . ." impermissibly placed defendant's character in issue. The trial court denied this motion, but instructed the jury as follows:

"Ladies and gentlemen, during the redirect examination of this last witness, . . . in response to a question asked by the District Attorney, she volunteered, 'He told me, "No, that because he had a record, that they did not do that" — end quote.' The Court is going to strike that portion only of her answer from the record, and the jury is instructed not to consider that portion of her answer for any purpose whatsoever in the trial."

The decision of whether statements which impermissibly place a defendant's character in issue "are so prejudicial as to warrant a mistrial [is for] the discretion of the trial court. See, *Bullock v. Bullock*, 244 Ga. 538 (1) (261 SE2d 331) (1979); *Spraggins v. State*, 240 Ga.

759 (2) (243 SE2d 20) (1978); *Lynch v. State*, 234 Ga. 446, 448 (216 SE2d 307) (1975). [Appellate courts] will look at the relevant circumstances to determine if the trial court abused its discretion in denying the motion for mistrial. See, *Bullock v. Bullock*, supra, p. 540; *Spraggins v. State*, supra, p. 762. Some of the factors and circumstances to be reviewed include the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety. See, 81 AmJur2d 445, Witnesses, § 437; *Bullock v. Bullock*, supra; *Spraggins v. State*, supra." *Sable v. State*, 250 Ga. 640, 643 (5), 644 (300 SE2d 663).

In the case sub judice, the questioning which prompted the State witness' response regarding defendant's "record" was an appropriate expansion of defense counsel's point on cross-examination that "he [defendant] didn't have signature power on . . ." Solcoa's checking accounts. Further, the State did not directly solicit the information regarding defendant's "record," nor does it appear that the State anticipated the witness' response. Under these circumstances, and since the trial court struck the objectional testimony and instructed the jury to disregard it, we find no abuse of discretion in the trial court's denial of defendant's motion for mistrial. This enumeration is without merit.

2. Next, defendant contends the trial court erred in "failing to give curative instructions to the jury . . . when witness James Franklin Shuman, III, testified that [defendant] had criminal charges pending in North Carolina and was out on bond thereby improperly placing [his] character in evidence."

" 'The general rule is that on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible.' *Brown v. State*, 118 Ga. App. 617, 618 (165 SE2d 185). See *Willingham v. State*, 118 Ga. App. 321, 323 (163 SE2d 317); *Bacon v. State*, 209 Ga. 261, 262 (71 SE2d 615). However, the admission of evidence, even if erroneous, is not harmful where substantially similar facts are shown either by the defendant . . . or by other evidence, unobjected to. *Borders v. State*, 46 Ga. App. 212 (6) (167 SE 213); *Whitley v. State*, 188 Ga. 177 (3) (3 SE2d 588)." *Waters v. State*, 122 Ga. App. 808, 809 (3), 810 (178 SE2d 770).

In the case sub judice, defendant testified that criminal charges were brought against him in North Carolina. Consequently, any error in allowing James Franklin Shuman III's testimony with regard to defendant's criminal record in North Carolina was harmless.

3. In his third enumeration, defendant contends "[t]he trial court erred in admitting evidence of a purported similar transaction regarding the [defendant's] prior involvement with Sunward Sales in

Texas."

"Evidence of similar crimes is admissible where its relevance to show identity, motive, plan, scheme, bent of mind and course of conduct, *outweighs* its prejudicial impact. 'However, before it is admissible, two conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the offense charged.' *Anderson v. State*, 184 Ga. App. 293, 294 (361 SE2d 270)." *Oller v. State*, 187 Ga. App. 818, 819 (2), 820 (371 SE2d 455).

The relevance of the State's similar transaction evidence outweighs its prejudicial impact in that it reveals defendant's elaborate and continuing scheme to defraud consumers through bogus sales operations. Further, both conditions for admission of this evidence are satisfied. The State showed that defendant "was the owner of a marketing company . . ." in Galveston, Texas, known as "Sunward Sales" (Sunward); that Sunward was aimed at marketing resort property "timesharing" units and that Sunward's representatives employed sales tactics similar to those used by sales representatives at Solcoa. In this vein, customers were attracted to high-pressure sales seminars through solicitations which promised "free" vacations and gifts; customers were given false information regarding the benefits of Sunward "timesharing" units; special pricing was offered for quick sales; down payments were taken via check on the day of sale, the proceeds of which were " 'hammer[ed]' " at the payor's financial institution; on-the-spot purchase money financing was made available to customers; and, after transactions were completed, purchasers did not receive what defendant's operators purported to sell. Further, a number of persons associated with defendant at Solcoa were associated with him at Sunward and he was a key operator in both the Texas operation and the Georgia operation. Under these circumstances, the trial court did not err in admitting evidence of defendant's involvement in the fraudulent sales scheme in Galveston, Texas. This enumeration is without merit.

4. Defendant contends in his final enumeration that "[t]he trial court erred in failing to give [his] request to charge number seventeen regarding renunciation and abandonment of criminal enterprise."

Defendant cites OCGA § 16-4-5 in support of his seventeenth request to charge. This Code section provides that "[w]hen a person's conduct would otherwise constitute an attempt to commit a crime under Code Section 16-4-1 [criminal attempt], it is an affirmative defense that he abandoned his effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal purpose." OCGA § 16-4-5 (a). The Supreme Court has held that "[w]here

the evidence shows a completed crime, there is no error in refusing to charge on attempt or abandonment of attempt. *Smith v. State*, 228 Ga. 293 (1) (185 SE2d 381) (1971)." *Sanders v. State*, 251 Ga. 70, 77 (4) (303 SE2d 13). In the case sub judice, those of the crimes charged and of which defendant was convicted were completed. The evidence revealed that defendant's operation took the victim's money and that defendant never intended to make good on promises to deliver home solar energy units. Consequently, the trial court did not err in refusing to give defendant's seventeenth request to charge.

*Judgment affirmed. Carley, C. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 4, 1990.

*Roger L. Curry*, for appellant.

*Thomas J. Charron, District Attorney, Nancy I. Jordan, Debra H. Bernes, Assistant District Attorneys*, for appellee.