## A92A0537. KENNEDY v. THE STATE.

(421 SE2d 560)

COOPER, Judge.

Timothy Kennedy as Commissioner of Roads & Revenues of Franklin County was indicted by the grand jury in September of 1990 on charges of theft by taking and malpractice in office, a violation of OCGA § 45-11-4. This indictment was quashed by the trial court and appealed by the State, but the appeal was dismissed when Kennedy was re-indicted. The second indictment, entered on March 19, 1991, charged Kennedy in two counts with theft by taking and theft by conversion; Count 3 charged him with malpractice in office in violation of Art. III, Sec. VI, Par. VI of the Georgia Constitution of 1983, based upon allegations that he provided labor, materials and equipment to pave a parking lot for the Veterans of Foreign Wars in Lavonia, Georgia, at the expense of the county. Robert Pruitt, a member of the Franklin County Advisory Board, was jointly indicted and just before trial pled nolo contendere and testified as a State's witness.

At trial, Pruitt testified that in November 1989 when the paving work was done, he was the vice commander of the Lavonia post of the VFW. Kennedy was not a member of the VFW. Paving the parking lot had been discussed at VFW meetings, and Pruitt was asked to find out if the county could do it for them. Pruitt knew of other organizations in the area for which the county had provided labor and equipment to do such work, and eventually as a member of the County Advisory Board, he approved payment for the asphalt used in paving the lot. Pruitt gave the VFW a receipt from Kennedy for gravel and labor on the parking lot provided by the county. On December 1, 1989, Pruitt was given a check for $2,589 made out to "Franklin County Commissioner Tim Kennedy" by the treasurer of the VFW post in payment for the paving job. Pruitt gave the check to Kennedy, who cashed it on December 9, 1989, and divided the money with Pruitt. No money was deposited in the county account. After hearing rumors several months later that an investigation into the matter had been initiated, Kennedy told Pruitt they would have to return the money. Kennedy gave Pruitt half of the money, and Pruitt returned $2,589 to the VFW post president, who signed a receipt dated September 6, 1990, reciting that the money was being donated back to the VFW from the paving job. The VFW then received a bill from Kennedy as County Commissioner, backdated to December 3, 1989, for $4,409.89.

At the close of the State's case, the defense moved for a directed verdict on the malpractice charge contending the State failed to show that the alleged constitutional violation was a crime that would comprise malpractice as contemplated by OCGA § 45-11-4. The motion was denied. Kennedy testified in his own behalf that he accepted the

check from the VFW and split it with Pruitt. He was not sure why the VFW had given him the check, but he cashed it and kept the money from December 1989 to September 1990 when he spoke to the county attorney, who advised him to give the money back to the VFW. Kennedy was convicted of all counts, and immediately after the verdict was returned, a presentence hearing was held. Kennedy was sentenced to four years on Count 1, one year to be served in confinement and a $3,000 .fine; two years of concurrent probation on Count 3; and no sentence was imposed on Count 2.

1. Kennedy contends that Count 3 failed to allege a criminal act in violation of OCGA § 45-11-4 for malpractice in office as a matter of law, relying on *State v. Burrell*, 189 Ga. App. 812 (377 SE2d 898) (1989). "The crime 'malpractice in office' is not statutorily defined. See OCGA § 45-11-4. The Supreme Court, however, stated that the term 'malpractice in office' as used in the statute, 'means a wrongful or unjust doing of an act which the doer has no right to do, or failure to do what the law makes it his duty to do, with evil intent or motive or due to culpable neglect.' [Cit.] . . . [T]he Supreme Court ruled that the statute 'was made sufficiently definite by construing the statute in connection with the laws defining the official's duties. . . .' [Cits.]" Id. at 812-813. The constitutional provision Kennedy was accused of violating states that except as otherwise provided therein, "the General Assembly shall not have the power to grant any donation or gratuity or to forgive any debt or obligation owing to the public, and . . . shall not grant or authorize extra compensation to any public officer, agent, or contractor after the service has been rendered or the contract entered into." Const. of Ga. 1983, Art. III, Sec. VI, Par. VI (a). It is conceded that this provision applies to cities and counties. *Grand Lodge &c. of Odd Fellows v. Thomasville*, 226 Ga. 4 (3b) (172 SE2d 612) (1970). The indictment alleged that Kennedy donated and gave a gratuity to the VFW Post, a private association, in the form of asphalt, labor from county employees, and the use of county equipment in the grading and preparation of the parking lot "for which Franklin County was not compensated or reimbursed therefore and from which said county received no substantial benefit. . . ." In *Burrell*, supra, the alleged malpractice was described only as an act "unauthorized by law and in violation of [the defendant's] duties as County Commissioner." Because the statutes outlining the defendant's duties did not forbid the use of public property for private use, this court held that the indictment did not clearly inform the defendant of a law that made his actions criminal and was thus subject to dismissal. Here, Kennedy was fully apprised of his obligations under the State Constitution, which he had taken an oath to uphold, and of the prohibited acts he was alleged to have committed. See OCGA § 45-3-1.

2. Kennedy enumerates as error the trial court's failure to conduct a presentence hearing as required by OCGA § 17-10-2, claiming this omission necessitates a remand for resentencing in accordance with that Code section. However, as pointed out by the State, his citation to the trial transcript shows that such a hearing was in fact held approximately an hour after the verdict was filed in the clerk's office. By reply brief, Kennedy complains that a one-hour lunch break did not afford him adequate time to prepare his witnesses and evidence for the presentence hearing and that he was not informed the State was going to seek the maximum sentence to be imposed. Defense counsel neither requested a continuance nor responded when the trial judge twice asked at the close of the hearing if there was "anything else" to be raised. Moreover, "[o]n appeal an enumeration of error cannot be enlarged by brief to give appellate viability to an issue not contained in the original enumeration. [Cit.]" *Chezem v. State*, 199 Ga. App. 869 (2) (406 SE2d 522) (1991).

3. Kennedy contends the trial court committed reversible error by denying his oral motion in limine and allowing the State to present the testimony of a woman who served on the first grand jury that indicted Kennedy in September 1990, without showing a necessity therefor in violation of OCGA §§ 15-12-73 and 24-9-21. The witness testified that in a sworn statement before the grand jury, she remembered Kennedy stating that Pruitt had given Kennedy a check made out to Kennedy, which Kennedy kept, but that six months later Kennedy had "gotten to feeling bad about keeping it," and returned the money. Defense counsel's renewed objections after direct and cross-examination of this witness were denied. Kennedy argues that the testimony was not necessary to resolve the issues being tried, and its prejudicial nature was so harmful a new trial is required.

Both OCGA §§ 15-12-73 and 24-9-21 (3) exclude admissions and communications "among" grand jurors on public policy grounds. In *Womble v. State*, 183 Ga. App. 727 (3) (360 SE2d 271) (1987), this court noted that OCGA § 15-12-72 "apparently makes an exception to [OCGA § 15-12-73] by providing that grand jurors shall disclose everything which occurs in their service whenever it becomes necessary in any court of record in Georgia. . . ." Id. at 728. However, because the Supreme Court has held that grand jurors could not be sworn and examined as witnesses to impeach their findings (*Turner v. State*, 57 Ga. 108 (1) (1876)), it was concluded in *Womble* that the trial court did not err in sustaining the State's objections to the admission of certain testimony introduced for the purpose of impeaching the finding of the true bill. We also determined that the trial court did not find that disclosure of the evidence was necessary to resolve the issues before the court. Id. Since impeachment was not the purpose for which the testimony was introduced, in the instant case, the only is-

sue is whether the trial court's failure to make an express finding that the testimony of the former grand juror was "necessary" renders its admission reversible error.

We conclude that it does not. Not only was the witness competent to testify (*Fite v. Bennett*, 142 Ga. 660 (3) (83 SE 515) (1914)) but she merely reiterated what Pruitt had previously testified to and what Kennedy testified to immediately following her appearance, thereby making a showing of necessity immaterial. "[T]he admission of evidence, even if erroneous, is not harmful where substantially similar facts are shown either by the defendant . . . or by other evidence, unobjected to. [Cits.]" *Freese v. State*, 196 Ga. App. 761 (2) (396 SE2d 922) (1990). "Because the very evidence objected to had previously been [and was subsequently] admitted without objection, the trial court's error in failing to exercise its discretion . . . was rendered harmless. [Cit.]" *Bell v. State*, 159 Ga. App. 621 (3) (284 SE2d 639) (1981). Accord *Carver v. State*, 198 Ga. App. 254, 255 (401 SE2d 300) (1990).

4. Kennedy complains that the trial court erred by instructing the jury to begin deliberations before it received the evidence and exhibits or the court had heard and ruled upon objections to the jury charge. He argues that by allowing the jury to begin deliberations prior to receiving all the evidence, the court effectively opened the door to deliberation outside of the evidence, from which impropriety must be presumed, which requires that the verdict be vacated for a new trial. However, there is nothing in the record to indicate that any impropriety or prejudice occurred. When the trial judge retired the jury to reach a verdict, he instructed them that "in just a few moments" he would send them the indictment and exhibits that had been placed in evidence. After hearing defense counsel's exceptions to the charge, no further instructions or corrections were made. " 'Harm as well as error must be shown affirmatively by the record to authorize a reversal. [Cit.] [Kennedy's contention that impropriety must be presumed under the circumstances] is mere speculation and conjecture unsupported by the record.' [Cit.]" *Columbus v. State*, 200 Ga. App. 81 (2) (406 SE2d 576) (1991).

5. Kennedy asserts that the trial court committed reversible error in giving its charge and by refusing to give certain jury charges which were warranted by the evidence and requested in a timely and proper manner.

(a) Kennedy argues that the trial court improperly included in the charge on theft by conversion a portion of the statute which was not adjusted to the evidence as there was no demand for the funds held by Kennedy so as to raise a presumption of intent. "[I]t is generally not error to include an entire Code section in a charge, even though portions are inapplicable. [Cit.]" *Bagby v. State*, 178 Ga. App.

282 (7) (342 SE2d 731) (1986). Kennedy does not contend that the jury was confused by the charge, and the record does not indicate that it was confused or misled. Id. at 284. Therefore, "[w]e will neither impute . . . an adverse construction to the charge nor give so little credence to the ability of the jury to select that portion of the statute obviously applicable to the facts and issues presented for their determination." *Rowles v. State*, 143 Ga. App. 553 (3) (239 SE2d 164) (1977). Compare *Anderson v. State*, 262 Ga. 26 (1c) (413 SE2d 732) (1992). Moreover, no harm has been shown since the conviction of theft by conversion was merged into the theft by taking conviction at sentencing.

(b) Kennedy asserts that the jury should have been instructed in regard to the leniency granted to Pruitt in his sentencing. The trial court gave a general charge on the credibility of witnesses, including an instruction that the jury could consider the interest or want of interest of a witness in determining his credibility. "The failure of the trial court to charge in the exact language requested is not reversible error where the charge given substantially covered the same legal principles. [Cits.] The trial court charged on the credibility of the witnesses and the weight to be given their testimony, on the impeachment of witnesses, and the purposes for which a prior contradictory statement could be considered. As the jury charge as given covered substantially the same issues as the requested [charge], we find no error." *Stephens v. State*, 196 Ga. App. 29 (2) (395 SE2d 353) (1990).

(c) The trial court's charge on malpractice in office was a correct statement of the law and there was no error in failing to give the requested charge taken from the text of *Burrell v. State*, supra. As explained in Division 1, the holding in that case is inapposite here. " '(W)e have frequently held that the language employed by a judge of a reviewing court in discussing a case, or in giving reasons for a decision is not always appropriate for use by a trial judge in charging a jury.' " *Gibbs v. State*, 174 Ga. App. 19 (1) (329 SE2d 224) (1985).

(d) The court's refusal to charge Kennedy's requested instruction on "bare suspicion" was not error. The jury was charged three different times on the need for the State to prove Kennedy's guilt beyond a reasonable doubt. " 'Although the trial court did not charge in the language requested by the appellant, the charge given covered substantially the same principles.' [Cit.]" *Mattarochia v. State*, 200 Ga. App. 681 (5d) (409 SE2d 546) (1991).

(e) The requested instruction on prior inconsistent statements in regard to a conversation between Pruitt and the VFW president after Kennedy returned the money was not germane to the question of Kennedy's intent when he cashed the check and kept the funds, which was the issue before the jury, and was properly refused. *White v. State*, 230 Ga. 327 (7) (196 SE2d 849) (1973); *Jenkins v. State*, 198

Ga. App. 843 (5) (403 SE2d 859) (1991).

6. Kennedy's challenge to the proof of the theft by conversion conviction on Count 2 is moot by virtue of the State's concession that this charge was brought as an alternative to Count 1 for theft by taking, and could not be separately sentenced. Although it is not clearly delineated in the transcript of the presentence hearing that a ruling of merger was made, inasmuch as Kennedy was sentenced only on Count 1, the conviction under Count 2 stands vacated by operation of OCGA § 16-1-7 (a). *Wade v. State*, 258 Ga. 324 (2) (368 SE2d 482) (1988). We find no grounds for reversal.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED JULY 9, 1992 —
RECONSIDERATION DENIED JULY 23, 1992 — 

*McClure, Ramsay & Dickerson, John A. Dickerson,* for appellant.

*Lindsay A. Tise, Jr., District Attorney, Charles H. Frier,* for appellee.