A92A1495. COTTINGHAM v. THE STATE.
A92A1496. SIMMONS v. THE STATE.
(424 SE2d 794)

JOHNSON, Judge.

Richard L. Cottingham and Steve B. Simmons were jointly tried and convicted of three counts of armed robbery. They appeal from their convictions and the denials of their motions for new trial.

*Case No. A92A1495*

1. Cottingham contends that the trial court erred in denying his motion for a directed verdict of acquittal as to Count 3 of the indictment charging him with armed robbery of Chris Burnette. Cottingham argues that because Burnette did not testify, there was insufficient evidence to show that Burnette had a reasonable apprehension that an offensive weapon was being used against him. We disagree.

"The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction." (Citations and punctuation omitted.) *Johnson v. State*, 201 Ga. App. 88, 89 (1) (410 SE2d 189) (1991). The State presented the testimony of Johnny Drew and Janet Higdon, the victims named in the first two counts of the indictment. Drew and Higdon both identified Cottingham as the man who used a gold-plated .22 caliber revolver to rob them while they were working at a convenience store. They testified that Cottingham pointed the revolver at them and ordered them to open the cash register. After getting $82 from the register, Cottingham also took $60 from Drew and $8 from Higdon. Burnette, a customer, then came into the store to pay for gas. Cottingham grabbed $20 from Burnette's hand, shoved Burnette against a wall and demanded his wallet. Burnette, however, was not in possession of a wallet. Cottingham, still holding the gun, then ripped the station's telephone out of the wall and fled the store. The State also presented the testimony of Carolyn Luallen, who claimed that immediately after the incident, Cottingham and Simmons both admitted committing the armed robberies. Reviewing the evidence in the light most favorable to the jury's verdict, we find that a rational trier of fact could have found Cottingham guilty beyond a reasonable doubt of armed robbery of Burnette. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accordingly, the trial court did not err in denying Cottingham's motion for a directed

verdict.

2. Cottingham next contends that the trial court erred in charging the jury that robbery by intimidation is a lesser included offense of armed robbery. Cottingham argues that this portion of the court's charge misled the jury into believing that robbery by intimidation is simply a method by which armed robbery can be committed. This argument is without merit.

It is generally not error to give an entire Code section in a charge, even though part of the section may be inapplicable to the allegations and the evidence. *Bagby v. State*, 178 Ga. App. 282, 283-284 (7) (342 SE2d 731) (1986). Here, the court read to the jury the entire text of OCGA § 16-8-41 (a), which defines armed robbery. The last sentence of that subsection (a) states, "robbery by intimidation shall be a lesser included offense in the offense of armed robbery." The court did not further charge the jury on the definition of robbery by intimidation. While it is true that the portion of the Code section complained of was unnecessary based on the allegations and evidence in the instant case, there is nothing about that portion or the rest of the charge that supports Cottingham's contention that the jury was led to believe that robbery by intimidation is a way of committing an armed robbery. Accordingly, we find no reversible error. See *Smith v. State*, 178 Ga. App. 19, 20 (4) (341 SE2d 901) (1986); *Slack v. State*, 159 Ga. App. 185 (2) (283 SE2d 64) (1981).

3. In his final enumeration of error, Cottingham challenges his sentence. The trial court sentenced Cottingham to serve consecutive terms of twenty years in prison on each of the three counts of armed robbery, and further ordered that those sentences run consecutive to a sentence Cottingham was already serving in Alabama. Prior to sentencing, the trial judge stated, "it [is] not my policy to run any sentence concurrent with any other sentence unless I've imposed that other sentence. . . . I always make it a policy to impose any sentence consecutive to any sentence that they're now serving." Cottingham argues that the trial court abused its discretion in sentencing him based on such a policy. Because the judge's policy relates only to his refusal to run a sentence concurrent with one imposed by a different court, Cottingham's argument applies only to that portion of the court's order which provides that Cottingham's 60-year sentence is to run consecutive to the Alabama sentence. To the extent that Cottingham challenges the other aspects of his sentence, we will not review those aspects for error as they are within the statutory limits. See *Snyder v. State*, 201 Ga. App. 66, 70 (10) (410 SE2d 173) (1991). However, we must address that portion of the sentence requiring it to run consecutively to Cottingham's Alabama sentence based on the judge's statement of his sentencing policy.

Trial courts are vested with broad discretion in determining

whether to run sentences they impose consecutive to or concurrent with sentences already imposed by other courts. OCGA § 17-10-10; *Daughtrey v. State*, 138 Ga. App. 504, 507 (2) (226 SE2d 773) (1976). If a Georgia court remains silent as to whether its sentence is to run consecutive to or concurrent with a sentence already imposed by a court in another state or in the federal system, the sentences are deemed to be consecutive as a matter of law. *Wheeler v. Jernigan*, 248 Ga. 302 (282 SE2d 891) (1981); *Taylor v. Green*, 229 Ga. 164 (190 SE2d 66) (1972); *Grimes v. Greer*, 223 Ga. 628 (157 SE2d 260) (1967). Because of the broad discretion in sentencing vested in trial courts, it is the duty of the courts to exercise that discretion as to all aspects of sentences they impose. Although we have found no Georgia cases which directly address the issue of a trial judge's mechanical sentencing formula or policy, the Eleventh Circuit and several other circuits have held that a mechanical sentencing formula is an abdication of judicial responsibility and that implementing a rigid sentencing policy is an abuse of discretion. See *United States v. Brown*, 723 F2d 826 (11th Cir. 1984). See also *Nation v. State of Ga.*, 645 FSupp. 179 (N. D. Ga. 1986). We recognize that in *Brown* and *Nation*, the rigid sentencing policy in question was one based solely upon the crime of which the defendant was convicted to the exclusion of all other relevant factors which a sentencing judge must consider in order to properly exercise discretion in sentencing. We note that the trial court's stated sentencing policy in the instant case was not based on the crime of which Cottingham was convicted, but instead was based on the fact that a prior sentence was imposed by a different court. Nonetheless, we find the reasoning of the federal courts instructive. We hold that a trial court's use of a mechanical sentencing formula or policy as to any portion of a sentence amounts to a refusal to exercise its discretion and therefore is an abdication of judicial responsibility. Here, the trial court abdicated its judicial responsibility by basing a portion of its sentence on the rigid policy that it would never run a sentence it imposed concurrent with a sentence imposed by another court. In ordering that Cottingham's sentence in this case run consecutive to the Alabama sentence based solely on the stated policy, the trial court failed to exercise its discretion. Accordingly, we must vacate that portion of the trial court's sentencing order and remand the case to the trial court for resentencing. Upon remand, the sole sentencing issue which remains to be considered by the trial court is whether Cottingham's 60-year sentence imposed in the instant case is to run consecutive to or concurrent with his Alabama sentence.

*Case No. A92A1496*

4. Simmons asserts that the trial court erred in allowing an agent

for the Georgia Bureau of Investigation (GBI) to testify as to incriminating statements allegedly made by Simmons. We agree and reverse Simmons' conviction.

GBI agent Gregory A. Ramey interviewed Simmons at a prison in Tennessee, where Simmons was incarcerated on a charge separate from the instant matter. GBI investigator Jim White and Tennessee prison official David Westbrook were present during the interview. After agent Ramey informed Simmons of his *Miranda*[1] rights, Simmons signed a form waiving those rights. Simmons then spoke with Ramey about personal background information and his relationship with Cottingham. When Ramey asked Simmons whether he had been with Cottingham on the date of the incident, Simmons stated, "I better talk to an attorney." At that point, agent Ramey, in Simmons' presence, made statements to investigator White concerning evidence they had against Simmons. Ramey made these statements despite the fact that White was already aware of the evidence. In response to the officers' discussion, Simmons allegedly made incriminating statements. Agent Ramey testified at the *Jackson v. Denno*[2] hearing that his purpose in discussing the evidence with investigator White in front of Simmons was to inform Simmons that the State was building a strong case against him so that Simmons might respond by making an incriminating statement.

"After a suspect in custody has invoked his right to counsel, subsequent interrogation is strictly prohibited unless initiated by the suspect. [Cit.]" *Hibbert v. State*, 195 Ga. App. 235, 236 (393 SE2d 96) (1990). Here, Simmons did not initiate further discussion with Ramey after invoking his right to counsel. Simmons made his allegedly incriminating statements only after agent Ramey and investigator White began discussing the case in front of him. Thus, the only issue before us is whether the officers' discussion in the presence of Simmons amounted to interrogation.

"The term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Citation and punctuation omitted. Emphasis in original.) *Hibbert v. State*, supra.

Agent Ramey should have known that his statements to investigator White were reasonably likely to elicit an incriminating response from Simmons. In fact, Ramey's admitted intent in discussing the case in front of Simmons was to elicit an incriminating response. "[T]he intent of the police . . . may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response. In particular, where a police practice is designed to elicit an incriminating response from the accused, it is unlikely that the practice will not also be one which the police should have known was reasonably likely to have that effect." *Rhode Island v. Innis*, 446 U. S. 291, 301-302, n. 7 (100 SC 1682, 64 LE2d 297) (1980). Accordingly, we find that Ramey's actions, designed to elicit an incriminating response, amounted to further interrogation of Simmons. Because Simmons was in custody, had invoked his right to counsel and did not initiate further discussions with the police, agent Ramey's subsequent interrogation was strictly prohibited. The trial court therefore erred in admitting into evidence testimony as to Simmons' alleged responses to this prohibited interrogation. The remaining evidence presented against Simmons was not so overwhelming that we can say this error of constitutional magnitude was harmless. Simmons' conviction therefore must be reversed.

5. Based on our decision in Division 4, we need not address Simmons' second and third enumerated errors concerning the sufficiency of the evidence as to Count 3 of the indictment.

*Judgment of conviction affirmed, sentence affirmed in part, vacated in part, and case remanded with direction in Case No. A92A1495. Judgment reversed in Case No. A92A1496. Carley, P. J., and Pope, J., concur.*

DECIDED OCTOBER 20, 1992 —
RECONSIDERATION DENIED NOVEMBER 6, 1992.

*Herbert E. Franklin, Jr.*, for appellant (case no. A92A1495).
*John R. Emmett*, for appellant (case no. A92A1496).
*Ralph L. Van Pelt, Jr., District Attorney*, for appellee.