## A93A1568. SYFRETT v. THE STATE.
(435 SE2d 470)

McMurray, Presiding Judge.

Defendant Syfrett appeals his conviction of aggravated battery. *Held*:

1. Defendant's first five enumerations of error question the sufficiency of the evidence to authorize his conviction. Viewed in the light most favorable to upholding the judgment of the trial court, the evidence was that defendant and a companion (who was a co-defendant acquitted of a charge of aiding and abetting defendant in the commission of the aggravated battery) arrived uninvited at the victim's house and began arguing with his guests. When the victim asked defendant and his companion to leave, defendant "slung a can of beer across the room . . ." and started "manhandling" the victim. The defendant began hitting the victim, who ended up on the floor with defendant holding him down and continuing to hit him. Defendant withdrew outside to his truck. The victim armed himself with an unloaded shotgun which he held by the barrel like a baseball bat. Defendant then took the shotgun away from the victim and began hitting him with it until he was unconscious. Physicians testified as to the multiple fractures the victim suffered and as to the lasting, disfiguring effect of the injuries.

Defendant relied on a defense of self-defense. The burden was on the State to prove that defendant did not act in self-defense. *Shackleford v. State*, 198 Ga. App. 768 (1) (403 SE2d 74). "A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself. . . ." OCGA § 16-3-21 (a). The evidence presented in the case sub judice was sufficient to prove defendant did not act in self-defense and to authorize the jury to find defendant guilty beyond a reasonable doubt of the offense of aggravated battery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d

560); *Parham v. State*, 204 Ga. App. 659 (420 SE2d 356).

2. There was no error in permitting a nine-year-old witness to the crime to testify without first determining whether she understood the nature of an oath. OCGA § 24-9-5 (b); *Sizemore v. State*, 262 Ga. 214, 217 (416 SE2d 500).

3. Next, defendant contends that the trial court erred in admitting evidence as to a statement made by defendant after he had been taken into custody but prior to any *Miranda (v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694)) warnings. The incident in question occurred when defendant was being transported from his attorney's office, where he had surrendered himself into custody, to jail. The police detective who arrested defendant testified that he did not question or interrogate defendant concerning the alleged crime but asked his name, address, and similar things for booking information, and informed him of the charges against him. Defendant then proceeded to discuss the circumstances surrounding the offense at issue.

"[T]he necessity of administering *Miranda* warnings exists only when the individual is *interrogated* while in custody." *Ramos v. State*, 198 Ga. App. 65, 66 (2) (400 SE2d 353). *Miranda* warnings are not a prerequisite to the admission of evidence concerning voluntary statements not made in response to any form of custodial questioning or interrogation. *McClendon v. State*, 201 Ga. App. 262, 264 (1b) (410 SE2d 760). " 'The term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.' (Citation and punctuation omitted. Emphasis in original.) *Hibbert v. State*, [195 Ga. App. 235, 236 (393 SE2d 96)]." *Cottingham v. State*, 206 Ga. App. 197, 200 (4) (424 SE2d 794). In the present case, it does not appear as a matter of law from the evidence that the detective knew or should have known that his interaction with defendant was reasonably likely to elicit an incriminating response from defendant. This was a question of fact to

be resolved by the trial court, and under the circumstances in this case, we find no abuse of discretion in the trial court's conclusion that no interrogation occurred. *Turner v. State*, 199 Ga. App. 836, 838 (3) (406 SE2d 512).

4. The trial court did not err in refusing to permit defendant to impeach the victim by showing his convictions for simple battery and three offenses of driving under the influence. " 'A witness may be impeached by showing conviction of a crime involving moral turpitude. (Cit.) The fact of conviction must be shown by record evidence and not by testimony. (Cit.)' *Johnson v. State*, 144 Ga. App. 406 (1) (240 SE2d 919) (1977). '(E)ven competent proof of an offense not involving moral turpitude, or incompetent proof of an offense involving moral turpitude, such as a mere indictment or a charge or an arrest or a trial and acquittal, are not legal methods of impeachment. (Cits.)' *Whitley v. State*, 188 Ga. 177, 179 (5) (3 SE2d 588) (1939). Accord *Strickland v. State*, 166 Ga. App. 702 (305 SE2d 434) (1983).

'Our Supreme Court has declared that crimes involving moral turpitude are "restricted to the gravest offenses, consisting of felonies, infamous crimes, and those that are malum in se and disclose a depraved mind. (Cit.)" (Cits.)' *Seaboard &c. R. Co. v. West*, 155 Ga. App. 391, 393 (271 SE2d 36) (1980). Accord *Hall v. Hall*, 261 Ga. 188 (402 SE2d 726) (1991) (holding that DUI is not such an offense). . . . [Also,] this court has previously held that such offenses as simple battery, see *Jabaley v. Mitchell*, 201 Ga. App. 477 (411 SE2d 545) (1991), and 'fighting,' see *Curry v. State*, 17 Ga. App. 312 (1) (86 SE 742) (1915), are not crimes involving moral turpitude." *Polk v. State*, 202 Ga. App. 738, 739 (2) (415 SE2d 506).

5. Relying upon *Chandler v. State*, 261 Ga. 402 (405 SE2d 669), defendant complains that the trial court refused to allow defendant to introduce evidence of certain acts of violence committed by the victim against third persons. The rule announced in *Chandler* represented a substantial change from the pre-existing law and the Supreme Court was concerned that "permitting a defendant to introduce evidence of specific acts of violence by the victim without advance notice to the state would result in unfairness to the state," and directed that "a defendant claiming justification and seeking to introduce evidence of specific acts of violence by the victim against third persons will notify the trial court of such intention prior to trial. The trial court will take reasonable steps to assure that the state has reasonable notice of such intention and of the nature of such evidence." *Chandler* at 408.

In the case sub judice, defendant had surrendered to authorities more than a year prior to the trial date. Nonetheless, defendant's notice of intent to introduce evidence of specific acts of violence by the victim against third persons was not filed or delivered to the State until late on the afternoon of the Thursday preceding the Monday

trial date. An amended notice was delivered during trial. The trial court was not informed of the notice until immediately prior to trial. The prosecuting attorney objected to the introduction of evidence as to the incidents listed in the notice and related his efforts to investigate the incidents. The prosecuting attorney complained that lack of time and the indefinite nature of the original notice had prevented any significant investigation into most of the incidents listed. The original notice provided by defendant listed nine incidents but did not provide the dates of the incidents, or as to some, location or identities of the third parties to whom the specific acts of violence were directed.

We trust that appropriate procedures for the application of the *Chandler* decision will soon be incorporated, as anticipated by the Supreme Court, into the Uniform Superior Court Rules in order to lend some certainty and efficiency to this process. In the meanwhile, although some guidance may be derived from the analogous provisions of Uniform Superior Court Rule (USCR) 31.3, we must address these issues on a case-by-case basis. While it is true that the victim in the case sub judice, unlike the victim in *Chandler*, was alive and able to communicate, and the prosecuting attorney was able to interview defendant's witnesses on this issue during a recess during the trial, the prosecuting attorney was still entitled to some reasonable period of time to investigate the incidents of specific acts of violence by the victim against third persons which defendant sought to present. Under the circumstances in the case sub judice, we conclude that the trial court did not abuse its discretion in determining that defendant's notice was untimely and not sufficiently definite to put the trial court or the State on notice as to the conduct which defendant sought to present.

Nonetheless, the trial court did determine that the prosecuting attorney had been able to adequately investigate two of the incidents and authorized defendant to present evidence as to those two incidents. Defendant chose not to present evidence as to these specific acts of violence by the victim, and objected during closing argument when the prosecuting attorney commented on the absence of such evidence. While the defendant's objection was sustained and the prosecuting attorney directed to cease this line of argument, defendant argues that the corrective actions of the trial court were not sufficient. However, this contention was not raised before the trial court and as there was no request for mistrial, rebuke of counsel, or admonishment of the jury to disregard this argument, there is nothing for us to review on appeal. *Flanders v. State*, 188 Ga. App. 98, 99 (5) (371 SE2d 918).

6. Defendant's tenth enumeration of error contends that the trial court erred in refusing to include in the charge to the jury a requested

instruction that in determining the weight to be attributed to testimony, the personal interest of the witness should be considered. The substance of the requested charge was included in the charge on credibility given by the trial court. The failure to use the exact language requested was not error. *Kennedy v. State*, 205 Ga. App. 152, 156 (5b) (421 SE2d 560).

7. The eleventh enumeration of error also complains of the trial court's refusal to give jury instructions requested by defendant. The four charges at issue under this enumeration all relate to the jury's consideration of the testimony of the child witness to the crime. The first two charges contain incorrect statements of law concerning the competency of the child witness, that is, requiring that the child understand the nature of an oath. See OCGA § 24-9-5 (b) and *Sizemore v. State*, 262 Ga. 214, 217, supra. The third refused instruction was adequately covered in the trial court's charge on credibility. *Kennedy v. State*, 205 Ga. App. 152, 156 (5b), supra. As to the fourth of these requests, the trial court did not err in refusing to caution the jury that children are more susceptible to influence and suggestion and are more prone to imagination than are adults, since this charge was patently argumentative. *Estep v. State*, 181 Ga. App. 842, 844 (2c) (353 SE2d 913).

8. In his final enumeration of error, defendant contends the trial court erred in refusing to admit into evidence copies of the complaint filed on behalf of the victim in a civil lawsuit against him and his co-defendant. Defendant argued that these documents were relevant to the issue of the credibility of the victim and should have been admitted for the jury to consider. However, the defendant was permitted to cross-examine the victim concerning his lawsuit and the allegation in the complaint duplicated this and other evidence developed at trial. There was no error in the exclusion of such cumulative evidence. *Chisholm v. State*, 199 Ga. App. 746, 747 (2) (406 SE2d 112).

*Judgment affirmed. Johnson, J., concurs. Blackburn, J., concurs specially.*

BLACKBURN, Judge, concurring specially.

Although I concur with the majority opinion, additional observations regarding the application of *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991), are appropriate.

As noted by the majority opinion, in *Chandler*, the Supreme Court required that "a defendant claiming justification and seeking to introduce evidence of specific acts of violence by the victim against third persons will notify the trial court of such intention prior to trial. The trial court will take reasonable steps to assure that the state has reasonable notice of such intention and of the nature of such evidence." Id. at 408. Unlike the ten-day notice requirement imposed

upon the State when it intends to present evidence of similar transactions pursuant to Uniform Superior Court Rule 31.3, or the State's duty to produce scientific reports at least ten days before trial pursuant to OCGA § 17-7-211, there is no specific time frame involved with regard to notifying the State of the intent to produce evidence of specific acts of violence by the victim, nor is the requirement to do so statutorily provided.

In the instant case, the trial court made a thorough effort to determine whether the State had sufficient time to investigate the incidents listed in the notice given by the defendant four days before the trial. The court concluded that the defendant could present evidence of two prior incidents of the victim's violence, because the State had ample opportunity to investigate, but not the other seven incidents listed. Under these circumstances, it appears that the trial court took "reasonable steps" to assure that the State had "reasonable notice," consistent with the general guidelines provided in *Chandler*. (It should be noted, however, that unlike the victim in *Chandler*, the victim in this case was alive and readily available to the State for its investigation. An argument could be made that *Chandler* should be limited to those situations where the victim is dead or otherwise unavailable.)

In *Chandler*, the Supreme Court foresaw that specific procedures governing the admission of such evidence would eventually be incorporated into the Uniform Superior Court Rules. However, two years later, as indicated by the majority opinion, we are still "trusting" that appropriate procedures will soon be added to those rules. If we are to continue addressing this issue on a case-by-case basis until that indefinite eventuality, I suggest that we assimilate our evaluation employed in determining whether sufficient notice of intent to produce evidence of similar transactions, or other procedures where the duty to give notice or produce lies with the State.

In the latter situations, where the State has not complied with the applicable time requirements, "the appropriate remedy is for the trial court to grant a continuance or recess upon timely request by the defendant." *Shannon v. State*, 205 Ga. App. 831, 832 (424 SE2d 51) (1992). See also *Stephan v. State*, 205 Ga. App. 241 (422 SE2d 25) (1992); *Wilburn v. State*, 199 Ga. App. 667 (405 SE2d 889) (1991). However, it should be noted that the application of that rule by trial courts and this court appears unbalanced at times. See, for example, *Johnson v. State*, 209 Ga. App. 395 (433 SE2d 638) (1993). In *Johnson*, the State produced a scientific report only *two* days before trial, contrary to the ten days required under OCGA § 17-7-211. The defendant did exactly what this court has indicated must be done in such a situation, i.e., ask for a continuance. The defendant quite reasonably requested one day's recess, but the trial court merely granted

a one-hour continuance, which action was affirmed by the majority of this court.

By comparison, it is difficult to argue that a level playing field exists when only a *one-hour* continuance is granted where the defendant has a *statutorily* created right to *ten* days' notice on the one hand, while *four days'* notice to the State is not deemed reasonable, where the State is only entitled to reasonable notice. We require the defendant to seek a continuance where the State fails to meet its statutorily imposed duty of ten days' notice, while we preclude the defendant's use of his evidence when the trial court determines the four days' notice was not reasonable.

We shift the burden to the defendant to show harm by the State's failure to follow the law in order to even obtain a continuance, while the State has no similar burden. Further, we do not provide for the exclusion of the State's evidence upon its failure to comply with the law as we do upon a failure of the defendant to give "reasonable" notice. Why do we not require the State to seek a continuance as we do the defendant? How is it proper to impose a burden on the defendant for a failure by the State without a reciprocal responsibility? We seem to impose a strict compliance standard on the defendant, who is the only party at risk in a criminal trial and is presumed to be innocent at that stage of the prosecution, while only holding the State, with all its resources, to a substantial compliance standard. In matters of procedure, it would seem justice would be more appropriately served by reversing these requirements if we are unwilling to simply require equal compliance from each of the parties. "Like the sun, the law shines on all who are in the same place with equal warmth and splendor," *Boland v. Klink*, 63 Ga. 448, 453 (1879), or at least it should.

DECIDED AUGUST 20, 1993 —
RECONSIDERATION DENIED SEPTEMBER 8, 1993

*John C. Swearingen, Jr.*, for appellant.
*Douglas C. Pullen, District Attorney, Bradford R. Pierce, Assistant District Attorney*, for appellee.