S94A1166. SMITH v. THE STATE.
(452 SE2d 494)

HUNSTEIN, Justice.

Charles Dennis Smith was found guilty of the felony murder of James Lamar Elliott. He appeals from the denial of his motion for a new trial.[1]

Appellant was working for Elliott at a house construction site when the two men got into an argument after Elliott criticized work appellant had done. Co-workers testified that when appellant got in Elliott's face, Elliott pushed appellant back, stated he did not want to fight, and told appellant to go home. Appellant responded by saying he was going to get his gun. Co-workers saw appellant leave the house, go to his truck, retrieve his gun, and run back to the house. A co-worker saw appellant enter the room with a .25 caliber pistol pointed upwards. Elliott, who had been warned by the co-worker, lunged at appellant and the two men struggled over the weapon. Ap-

---

[1] The homicide occurred on September 12, 1992. Smith was indicted on January 5, 1993 in Cobb County. He was found guilty on July 23, 1993 and was sentenced the same day. His motion for new trial, filed on August 4, 1993, was denied December 7, 1993. A notice of appeal was filed on December 21, 1993. The transcript was certified on April 15, 1994 and the appeal was docketed on April 22, 1994. Oral arguments were heard on September 12, 1994.

pellant shot Elliott in the leg from a distance of over five feet and then in the face from less than five feet. Elliott died two days later as a result of the head wound.

Appellant testified that the work argument escalated into a fight and that Elliott, because of his greater size and strength, beat appellant. Appellant stated that his purpose in getting the gun was to allow him to talk with Elliott without being attacked. He testified that the gun was pointing down when he entered the room, that Elliott immediately attacked him, and that he had no control over the gun during the fight, testifying that he did not remove the safety on the weapon, never had his hand on the trigger, and could not remember pulling the hammer.

1. We find the evidence sufficient to support appellant's conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. We find no error in the trial court's refusal to give appellant's requested charge on involuntary manslaughter. As to OCGA § 16-5-3 (a), there was no evidence to support the requested charge based on the unlawful act of reckless conduct, in that appellant's own testimony established he brought the gun into the room with the specific intent of inducing fear of violent injury in Elliott in order to prevent him from attacking appellant, accord *Riley v. State*, 181 Ga. App. 667 (3) (353 SE2d 598) (1987), rather than out of criminal negligence. Compare *Bowers v. State*, 177 Ga. App. 36 (338 SE2d 457) (1985). The trial court's refusal to give the requested charge based on the unlawful act of pointing a gun at another was also proper given the uncontroverted evidence that Elliott responded to the gun by immediately lunging at appellant and struggling with him over the weapon, thereby establishing that Elliott was placed in reasonable apprehension of immediate violent injury. *Rhodes v. State*, 257 Ga. 368 (5), (6) (359 SE2d 670) (1987). We find no merit in appellant's argument that the evidence supported a charge pursuant to OCGA § 16-5-3 (b), lawful act – unlawful manner involuntary manslaughter. *Cook v. State*, 249 Ga. 709 (4) (292 SE2d 844) (1982).

3. Appellant contends the trial court erred by admitting statements he made to police before he was read his *Miranda* rights. It is well established that a trial court's findings as to factual determinations and credibility relating to the admissibility of a statement will be upheld on appeal unless clearly erroneous. *Brown v. State*, 262 Ga. 833 (6) (426 SE2d 559) (1993). After the *Jackson v. Denno* hearing, the trial court found that appellant, in a phone call made to the police shortly after midnight of the day of the shooting, voluntarily discussed turning himself in with Detective Dawes. In the course of the call, Dawes inquired about the gun used in the crime and was told by appellant that he would bring it with him. Twenty minutes later,

when appellant arrived at the police station and was placed in an interview room by Dawes, the officer asked if appellant brought the gun with him. The trial court found that this question about the gun was a follow-up to the phone conversation and was asked out of concern for the safety of the officers at the police station. Appellant informed Dawes that the gun was outside. In the time while another officer went to retrieve the gun and Dawes began preparing booking forms and *Miranda* rights forms (intending to await the arrival of another investigating officer before reading appellant his rights), the trial court found that appellant, voluntarily and spontaneously and not in response to any questioning, began making comments about the gun (its caliber, the number of shots fired, etc.) and then gave his version of the events, including a statement that he did not mean to shoot to kill Elliott but intended only to scare him. During this statement, the other investigating officer arrived and noticed a smell of alcohol about appellant. When appellant paused, the officer asked appellant if he had been drinking. When appellant stated he had imbibed 12 beers in the past hour, the officers stopped all conversation and appellant was taken to a detention center. The trial court, crediting the officers' testimony that they had noted no verbal or physical indications of intoxication, found that notwithstanding appellant's beer consumption, his statement was voluntary and not elicited by any questions posed by the officers. Likewise, the trial court found that when Dawes met with appellant approximately 11 hours later and appellant, in response to Dawes' initial inquiry about how he was feeling, stated not only that he was feeling better but also proceeded without any further comment from Dawes to give a statement in which he basically reiterated his earlier comments, that this statement was voluntary and not made in response to any custodial interrogation. When appellant stopped talking, Dawes advised appellant of his *Miranda* rights. Appellant invoked his right to counsel and no interview was conducted.

We find no reversible error in the trial court's ruling. Dawes' initial question to appellant regarding the whereabouts of the gun appellant had stated he was bringing with him was not interrogation requiring *Miranda* warnings but rather constituted a query necessary to determine whether appellant was armed, which was warranted in view of the danger an armed suspect posed to Dawes and to others in the police station. *New York v. Quarles*, 467 U. S. 649, 657 (104 SC 2626, 81 LE2d 550) (1984); compare *State v. Overby*, 249 Ga. 341 (290 SE2d 464) (1982). Contrary to appellant's argument, *Miranda* warnings are not a prerequisite to the admission of evidence concerning voluntary statements not made in response to any form of custodial interrogation. *Syfrett v. State*, 210 Ga. App. 185, 186 (435 SE2d 470) (1993). The evidence supports the trial court's finding that appellant's statements at the police station and at the detention center were not the

result of "interrogation" inasmuch as the police officers' words or actions were not such as to be reasonably likely to elicit an incriminating response from appellant. *Rhode Island v. Innis,* 446 U. S. 291, 301-302 (100 SC 1682, 64 LE2d 297) (1980); *Hibbert v. State,* 195 Ga. App. 235, 236 (393 SE2d 96) (1990). Hence, appellant's subsequent spontaneous and unsolicited statements regarding the shooting were not subject to the strictures of *Miranda.*

4. Appellant contends the trial court erred under *Robinson v. State,* 261 Ga. 698, 699-700 (410 SE2d 116) (1991) by failing to give his requested "two equal theories" charge.[2] The trial court's charge on circumstantial evidence basically tracked the language in OCGA § 24-4-6 and the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Part 2 (J) (2d ed. 1991). The trial court thus comported with this Court's holdings in *Robinson* and *Mims v. State,* 264 Ga. 271 (443 SE2d 845) (1994). See *Burris v. State,* 204 Ga. App. 806 (3) (420 SE2d 582) (1992). It is never error to refuse to give a requested "two equal theories" charge where a trial court properly instructs the jury on circumstantial evidence. See *Mims,* supra at 274 (Hunt, C. J., concurring). Hence, we find no error here.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 30, 1995.

*Alan C. Manheim, Lewis P. Perling,* for appellant.

*Thomas J. Charron, District Attorney, D. Victor Reynolds, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige M. Reese, Assistant Attorney General,* for appellee.

---

[2] Appellant submitted two "two equal theories" charges and complains of the failure to give the following requested language:

> I charge you that where the evidence presents two equal theories, one consistent with innocence and the other with guilt, the justice and humanity of the law require you to adopt the theory consistent with innocence and acquit the Defendant. In that event, the form of your verdict would be "We the jury find the Defendant 'not guilty.' "