## 34750. MOODY v. THE STATE.

BOWLES, Justice.

On November 19, 1977, Barbara Lee Moody, hereinafter the defendant, shot and killed the victim, a twelve-year-old boy, as he was leaning against her car. She was charged with murder. At the trial she defended the charge on the ground of insanity. Defendant was a former mental patient and had been previously institutionalized for her mental problems. Expert evidence at trial concerning defendant's ability to distinguish between right and wrong at the time of the shooting was conflicting. Defendant was convicted of murder and sentenced to life imprisonment. She brings seven enumerations of error to this court. We affirm.

1. In her first enumeration of error, defendant contends that the trial court erred in refusing to charge the jury the law as to involuntary manslaughter. Although defendant did not testify in her own behalf, in her statement to the police shortly after the incident she stated that she had only intended to shoot close to the victim to scare him and not to hit him.

The court did not err in refusing to charge on involuntary manslaughter. This fatal shooting was neither the result of the commission of an unlawful act other than a felony (Code Ann. § 26-1103(a)) nor was it the result of the commission of a lawful act in an unlawful manner (Code Ann. § 26-1103(b)). It was unlawful for defendant to shoot at the victim in this case and shooting at him was a felony. See in this regard *Braxton v. State,*

240 Ga. 10 (239 SE2d 339) (1977).

2. In her second enumeration of error, defendant contends that the trial court erred in refusing to charge the jury the law as to accident. Defendant argues, as in Division 1 above, that her statement itself justifies such a charge.

Code Ann. § 26-602 states: "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention, or criminal negligence." Defendant's act of shooting "close to" the victim in order to scare him was criminally negligent. Consequently a charge on accident was not authorized. *DeBerry v. State,* 241 Ga. 204 (243 SE2d 864) (1978) is a case very similar to the case at bar wherein this court held that a charge on accident should have been given, although the court went on to hold the failure to so charge was harmless error. The facts in that case, though, are sufficiently different from the facts here so that a different result on the issue of error is authorized. In *DeBerry,* the defendant did not deliberately shoot *at* the victim. Rather, according to him, he fired while maneuvering his truck in an effort to escape the victim. On the contrary, defendant Moody in the case at bar deliberately fired *at* the victim although hoping to shoot close to him. Furthermore, even if we were to hold that the trial court erred in failing to charge on accident in this case, such error would have been harmless under the reasoning in *DeBerry,* supra.

3. In her third enumeration of error, defendant contends that the trial court erred in failing to charge the jury that the state had the burden of proving beyond a reasonable doubt that she had the mental capacity to be convicted of murder. Defendant points out that the trial court did, however, charge on the presumption of sanity. We find no error. All reference to burden of proof in the court's general charge placed that burden on the state to prove all elements of the crime beyond a reasonable doubt. In fact, the charge as given was more favorable to defendant than it could have been. See *Grace v. Hopper,* 234 Ga. 669 (217 SE2d 267) (1975), ruling upheld in Grace v. Hopper, 566 F2d 507 (1978). See also *Lamb v. State,* 241 Ga. 10 (243 SE2d 59) (1978); *Durham v. State,* 239 Ga.

697, 698 (238 SE2d 334) (1977); *State v. McNeill,* 234 Ga. 696 (217 SE2d 281) (1975).

4. In her fourth enumeration of error, defendant asserts that the trial court erred in refusing to admit into evidence the certified hospital records of Central State Hospital. She contends that such records are admissible under Code Ann. § 38-712 et seq. Defendant misconstrues this law. Code Ann. §§ 38-712—38-716 deal with the method of authenticating records which are otherwise admissible and are not new rules of admissibility eliminating the hearsay rule. See *Dennis v. Adcock,* 138 Ga. App. 425 (1) (226 SE2d 292) (1976) in this regard. Records which contain diagnostic opinions, conclusions and other statements of third parties not before the court are still not admissible if tendered in toto though relevant portions of such records not subject to such defects may be. *Dennis v. Adcock,* supra; *Martin v. Baldwin,* 215 Ga. 293 (2c) (110 SE2d 344) (1959); *Hurt v. State,* 239 Ga. 665 (10) (238 SE2d 542) (1977). Therefore, the trial court in the case at bar correctly excluded from evidence defendant's entire hospital record from Central State Hospital since it was tendered in toto. Subsequently, defendant's counsel removed certain portions from the record, referred to them extensively in cross examination of one of the state's expert witnesses, and then attempted to tender those documents into evidence. The trial court excluded those documents as well and properly so. As stated above, evaluations, opinions, diagnoses, conclusions and statements of third parties not before the court are inadmissible.

Defendant, in her brief, cites a 1946 Court of Appeals case which appears to be directly on point and supports her argument that her hospital records should have been admitted in the defense of her case. The accused in *Rowland v. State,* 73 Ga. App. 729 (37 SE2d 923) (1946) was convicted of assault with intent to murder. He attempted to introduce into evidence his clinical record from an army hospital which tended to support his testimony about his mental problems. The Court of Appeals reversed his conviction stating that the record should have been admitted. No citation of authority appears in the opinion nor does it appear that the case has

ever been cited in any subsequent opinion. The case is clearly a solitary aberration from the otherwise uncontroverted rule in Georgia that records containing opinions, diagnoses, and other hearsay are inadmissible. *Rowland v. State,* supra, is hereby expressly overruled.

5. In her fifth enumeration of error, defendant contends that the trial court erred in permitting the state to call a Dr. Perez as an expert witness to rebut defendant's insanity defense. Dr. Perez was defendant's psychiatrist at Central State Hospital where she had been sent to determine her competency to stand trial. The contention is that Dr. Perez' testimony is a violation of the rule of privileged communications between psychiatrist and patient (Code Ann. § 38-418 (5)).

Dr. Perez examined defendant pursuant to a court order. She was not at Central State for treatment nor does the record reflect that she received any.[1] The psychiatrist-patient privilege does not apply in such cases. *Pierce v. State,* 243 Ga. 454 (254 SE2d 838) (1979); *Massey v. State,* 226 Ga. 703 (177 SE2d 79) (1970). See also *Kimble v. Kimble,* 240 Ga. 100 (239 SE2d 676) (1977). *Plummer v. State,* 229 Ga. 749 (194 SE2d 419) (1972), cited by defendant does not require a different result.

6. In her sixth enumeration of error, defendant contends that the trial court erred in denying her motion to suppress the murder weapon as it was found as the result of an illegal search. She also argues that her later statement to the police should have been suppressed as a "fruit of the poisonous tree." The state argues that the search, which was without a warrant, was valid as defendant consented to the search.

Two police officers arrived at the scene of the shooting and asked bystanders who had done it. They were directed to defendant's trailer and when defendant opened the door they asked her if she was the one who had shot the boy. Upon her affirmative response, defendant

---

[1] Defendant's references to the record on this point do not show that treatment was given but only that tests were administered and examinations conducted to determine the issue of her ability to stand trial.

was placed under arrest, read her Miranda rights, and her hands were handcuffed behind her. One of the officers asked her where the murder weapon was and she replied that she believed it was in her purse. The officer looked inside her purse and when the gun was not found there, he immediately began searching the immediate area for it and soon found it inside a trash bag on top of some clothes.

We find that under these circumstances (i.e. a murder having just been committed, the defendant retreating to her trailer with the gun in her hand, her misstatement about the gun's location upon her arrest), the limited immediate search conducted by the officer to find the murder weapon was reasonable and, therefore, the trial court properly denied the motion to suppress.

Additionally, we find that, under the circumstances of this case, the error, if any, was harmless beyond a reasonable doubt. See Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967). This was not a case, as in Bumper v. North Carolina, 391 U. S. 543 (88 SC 1788, 20 LE2d 797) (1968), in which the illegally seized weapon was needed to link the accused to the crime. Defendant does not dispute the fact that she shot and killed the victim in this case. Her defense was insanity. There were several eyewitnesses to the shooting. The physical presence of the murder weapon in this case added little to the case and was not likely to have contributed to defendant's conviction.

Furthermore, even if the search had been illegal, defendant's statement to the police would not have to be suppressed as a fruit of the poisonous tree. Defendant has not illustrated how the statement is a "fruit" of the officers' claimed illegal search of the trailer. On the contrary, it appears that the statement, if a fruit of anything, is a fruit of defendant's lawful arrest. Defendant does not argue that her statement was involuntarily made and, therefore, there would be no error in admitting it into evidence.

7. In her final enumeration of error, defendant argues that the trial court erred in failing to charge the American Law Institute test of mental incompetency.[2]

---

[2]Defendant requested the following charge: "A

252

She urges that this court should specifically abandon the "McNaughton Rule" as codified in Code Ann. § 26-702.[3]

It is for the legislature to say whether the McNaughton Rule should be replaced by the ALI test of mental incompetence in the trial of criminal cases. In her brief, defendant attempts to persuade us to act for the legislature by holding the McNaughton Rule unconstitutional as a violation of due process. Defendant does not illustrate in what manner the rule violates due process and, therefore, there is nothing upon which this court may pass.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs in the judgment only.*

SUBMITTED APRIL 6, 1979 — DECIDED SEPTEMBER 6, 1979 — REHEARING DENIED SEPTEMBER 25, 1979.

*Neil Wester,* for appellant.

*Charles A. Pannell, Jr., District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Assistant Attorney General,* for appellee.

person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defects she lacks substantial capacity either to appreciate the criminality (wrongfulness) of her conduct or to conform her conduct to the requirements of the law. The terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

[3]"A person shall not be found guilty of a crime, if at the time of the act, omission, or negligence constituting the crime, such person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence."