A92A0140. OLDHAM v. THE STATE.
(422 SE2d 38)

POPE, Judge.

Appellant/defendant James E. Oldham II appeals his conviction of operating a moving motor vehicle while there was at least 0.12 percent by weight of alcohol in his blood. Defendant was also indicted for vehicular homicide and driving while under the influence of alcohol to the extent that he was a less safe driver, but found not guilty of those charges.

1. We will consider defendant's first and second enumerations of error together. First defendant contends the evidence was insufficient to allow a rational trier of fact to find that defendant was operating a moving motor vehicle while there was at least 0.12 percent by weight of alcohol in his blood. In his second enumeration of error, defendant argues the trial court erred by refusing to allow him to introduce the

results of a blood/alcohol test.

Defendant admitted that he consumed several beers on the night in question. Defendant further testified that after consuming those beers he drove his vehicle accompanied by a friend, who was killed when defendant lost control of his vehicle and the vehicle struck a guard rail. The record reveals that approximately one hour after the collision defendant's blood was tested for the presence of alcohol and his blood/alcohol concentration was determined to be .129 percent. The State admitted that test result into evidence without objection.

Defendant sought to introduce the results of a second blood/alcohol test allegedly administered two minutes after the first test. That test showed a .11 percent blood/alcohol concentration level. The trial court refused to allow the document containing the test result into evidence.

When deciding whether the results of an alcohol concentration level test should be admitted into evidence, the trial court must engage in a two-part analysis. First, the trial court must decide if the test result must comply with the dictates of OCGA § 40-6-392. In that statute, the Georgia legislature set forth when test results for alcohol or drugs would be deemed valid and admissible evidence "in a *civil or criminal* action arising out of events where a person is allegedly operating a motor vehicle under the influence of alcohol or drugs." *Perano v. State*, 250 Ga. 704, 707 (300 SE2d 668) (1983). As the Georgia Supreme Court recognized in *Perano*, the procedures outlined in that statute are limited to those tests performed at the request or direction of a law enforcement officer. Id. When an alcohol level concentration test is performed at the request or direction of a law enforcement officer and complies with the dictates of that statute, it is admissible.

Often, however, a party seeks to admit at a trial the results of an alcohol concentration level test which was not performed at either the request or direction of a law enforcement officer. Those tests are not subject to the dictates of OCGA § 40-6-392 and the party seeking to admit the test results must satisfy the court that the results are admissible pursuant to the rules of evidence. *Jackson v. State*, 196 Ga. App. 724 (397 SE2d 13) (1990); *Bynum v. Standard Oil Co.*, 157 Ga. App. 819, 820 (2) (278 SE2d 669) (1981).[1]

The most frequent objection posed to bar the admission of such test results is that the test results are hearsay and therefore cannot be admitted into evidence. Documentary evidence of a test designed to measure a person's alcohol concentration level may be admitted into evidence under the business records exception to the hearsay rule,

---

[1] To the extent these cases suggest that the test results were only admissible because they were ordered for the purpose of providing the defendants with medical treatment, we disapprove of those cases.

when the party seeking to admit the test results lays a proper foundation by offering the testimony of a witness who is familiar with the method of record keeping, who can therefore testify that the entry of the test result was made in the regular course of business at the time the test was conducted or within a reasonable time thereafter. *Wilson v. Childers*, 174 Ga. App. 179, 180 (329 SE2d 503) (1985); *Venenga v. State*, 163 Ga. App. 161 (3) (293 SE2d 553) (1982). It is not necessary to have the person who performed the test or the person who ordered the test to testify, because the test results are purely factual data. The numerical result (alcohol concentration level) is determined by the machine used to administer the test, not by the person who performs the test. Our statutes then determine what legal conclusion may be drawn from the test results. See *Walters v. State*, 195 Ga. App. 434 (6) (394 SE2d 105) (1990) (holding that the results of a breath test performed on an Intoximeter 3000 were admissible because the analysis of defendant's breath was created by the machine rather than by the trooper who administered the test).

Business records containing only test results must be distinguished from those records that contain conclusions and opinions in addition to the test results or in lieu of the test results. See *Johnson v. State*, 256 Ga. 259, 260 (347 SE2d 584) (1986). Such opinions, conclusions and diagnoses constitute additional hearsay and unless the person whose diagnosis, conclusion or opinion which is contained on the business record is available to testify and can be qualified as an expert capable of rendering such an opinion, the portion of the business record containing the hearsay is inadmissible. *Moody v. State*, 244 Ga. 247 (4) (260 SE2d 11) (1979); *Spivey v. State*, 184 Ga. App. 118 (361 SE2d 9) (1987).[2]

When defendant sought to introduce the document containing the second test result, the State objected to the document solely on the basis that it contained an opinion. A review of the document, however, reveals that it contains only the numerical result of the alcohol concentration level test performed on defendant's blood, which is not an opinion. The document does not contain opinions, conclusions or diagnoses requiring expert testimony. Furthermore, the defendant laid a proper foundation for the admission of the document through the testimony of the custodian of records of the laboratory where the second test was conducted. Accordingly, the trial court erred by refusing to admit this test into evidence. The exclusion of this test result cannot be harmless error in this case since the second test showing defendant's blood/alcohol concentration level to be .11 percent was

---

[2] To the extent our decision in *Spivey v. State*, supra, can be read as holding that the test results constituted an opinion requiring the testimony of the person performing the test and recording the results, we disapprove of that case.

conducted only two minutes after the first test showing a .129 percent blood/alcohol concentration level and would tend to create doubt concerning the accuracy of the first test.

The dissent concedes that it may be inferred from the document that the blood sample used for the test in question was drawn at 5:42 a.m. on January 26, 1990. The top portion of the document was obviously generated by computer. In the block labelled time the numbers "0542" appear. A reference to time in this manner, without the use of a separating colon and with the beginning number being "0," clearly indicates that the time given was on a 24-hour clock, as is used by the military. All persons familiar with 24-hour clocks or military time would know that the time the blood was drawn was 5:42 a.m.

The dissent also posits that because the records custodian did not testify that the test results were recorded on the document at the time of the test or within a reasonable time thereafter, the document was properly excluded. While it is not indisputable from the face of the document, the document indicates that the results were recorded on the same day the test was administered.[3] Furthermore, the State did not object to the admission of the document in question on that basis and such an objection is deemed waived. As the author of the dissent recently recognized when an objection is not lodged at trial, it should not be entertained on appeal. *Banks v. State*, 201 Ga. App. 266, 267 (1) (410 SE2d 818) (1991).

The dissent suggests the type of test used to determine the defendant's alcohol concentration level is determinative of whether the results are factual data or opinion. Although the dissent is correct that there are both gas and chemical tests used to determine blood/alcohol concentration levels, machines are used in each kind of test to measure the level of alcohol concentration. The numerical determination of the alcohol concentration level is objective factual data regardless of the type of test performed. Our courts have recognized the reliability of both gas and chemical tests.

The dissent mischaracterizes the testimony of the forensic chemist who performed the first test of defendant's blood/alcohol concentration level. He was asked *if based on the test results he had an opinion concerning defendant's blood/alcohol level.* He testified that *based upon the test results his opinion was* defendant's blood had an alcohol concentration level of 12 grams per 100 milliliters of blood. He formed an opinion based upon the test results, but the results themselves are not opinions.

Finally, the dissent takes issue with disapproving our decisions in

---

[3] The document indicates that a telephone report of the test results was made at 11:20 p.m. on January 26, 1990.

*Bynum v. Standard Oil Co., Spivey v. State,* and *Jackson v. State* based on factual distinctions between those cases and this case. There will always be factual distinctions between our cases; however, all these cases dealt with the issue of admissibility of test results. It is our duty to the bench and bar of this state to give *clear* guidance on this issue.

2. Our holding in Division 1 renders it unnecessary to address defendant's remaining enumeration of error.

*Judgment reversed. Sognier, C. J., Birdsong, P. J., Carley, P. J., Cooper and Andrews, JJ., concur. McMurray, P. J., concurs in judgment only. Beasley and Johnson, JJ., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent because exclusion of the document proffered by defendant is not reversible error.

In general, rulings on the challenged admission or exclusion of evidence are in the sound discretion of the trial judge. *Alexander v. State,* 239 Ga. 108, 110 (1) (236 SE2d 83) (1977). If evidence is excluded which the offering party has a right to put before the jury, however, the exclusion will be error and reversible if material to the verdict. See, e.g., *Georgia Bldg. Svc. v. Perry,* 193 Ga. App. 288, 290 (1a & b) (387 SE2d 898) (1989); *Minnick v. Lee,* 174 Ga. App. 182, 184 (1) (329 SE2d 548) (1985).

Defendant sought to introduce, through the custodian of records at a clinical laboratory, a report which on its face shows an ethyl alcohol toxicology study was conducted on the blood of a James Oldham and the quantitation was "0.11% (toxic is $> 0.20\%$)." Although there are several names and initials on the document, it is not indicated who performed the study or wrote the report. Nor is the type of study recorded. Some of the entries are handwritten and some are computer entries. One computer entry as "date collected" is "01/26/90" and "time" is "0542." It does not indicate whether this is a.m. or p.m. Although all other times recorded on the document are p.m., it may reasonably be inferred that "0542" was the standard equivalent, as used in the military, of 5:42 a.m. Nevertheless, who took the blood sample is unknown and there is no chain of custody shown.

The phlebotomist who drew the sample which, according to the hospital medical lab technician, tested at .129 testified that she drew the blood at 5:40 a.m. and did not know of anyone taking another sample at 5:42 a.m.

The records custodian did not testify that the record was made at the time of the test or within a reasonable time thereafter, the third prerequisite to the entry of business records. OCGA § 24-3-14 (b). The notation on the document that a telephone report of the results was made at 11:20 p.m. on January 26, 1990, does not establish the

time when the *document* was generated. Aside from this, however, the document would have been properly excluded. It was offered to prove that some unknown scientific test was conducted on blood which was drawn by some unknown person at 5:42 a.m. on January 26, 1990, and transmitted by some unknown means and method to a private laboratory some distance from where defendant was hospitalized and that the test showed that the blood contained 0.11 percent ethyl alcohol.

Without knowing what procedure was employed, the test for admissibility of scientific evidence cannot be applied. See *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991).

In addition, the absence of the test's identity makes it impossible to conclude that the result was not based on opinion but was merely the recording of objective factual data. The majority assumes that the numerical result of 0.11 percent was determined by "the machine" used to administer the test, but the method of testing is unknown. Whether it was the type of test administered in the case of the hospital-tested blood, which the lab technician testified was a chemical reagent test conducted on a clinical analyzer known as an A.C.A. machine, or instead was a mass spectromoscope test, or a gas chromatography test or some other method, is not known. The report uses unexplained code in the block labeled "test." According to the testimony of a forensic chemist who performed a gas chromatography test on the blood of the deceased and the same on the blood of appellant, the results of the type test he performed are opinion. Opinions drawn by experts in scientific testing must be subject to cross-examination. *Eason v. State*, 260 Ga. 445 (396 SE2d 492) (1990).

The three cases which the court disapproves to an extent do not deserve such disapproval and should be retained as they appear. They do not deal with the same question.

*Bynum v. Standard Oil Co.*, 157 Ga. App. 819, 820 (2) (278 SE2d 669) (1981), dealt with a *hospital* record of a test ordered by the physician for the purpose of determining what type anesthesia to use. It thus had some foundation and demonstrated indicia of reliability besides being a hospital record. This case, on the other hand, deals with an outside laboratory test performed at an unknown person's request (the report just shows that the donor's doctor is Barlow; it does not show that he ordered this additional test). It also does not show that it was performed for medical treatment; the most it shows is that its result was given to an unidentified person as a telephone report over 17 hours after the wreck.

*Spivey v. State*, 184 Ga. App. 118 (361 SE2d 9) (1987), held that a computer printout documenting the results of a blood alcohol test would be admissible as a properly-foundationed business record but that it was not in this case because it contained a diagnostic conclusion. The latter would be subject to cross-examination, so the person

who drew the conclusion would have to be present in order for the conclusion to be tested. In this case we are not even dealing with a blood testing machine's computer printout of test results produced by the testing machine, but with a handwritten report. The latter is not a document produced by a testing machine.

In *Jackson v. State*, 196 Ga. App. 724 (397 SE2d 13) (1990), the emergency room treating doctor testified that he ordered the test, and that he did so in order to take blood alcohol level into account in making medical treatment decisions. Thus again, the record had indicia of reliability even though it was hearsay, because it was made for the doctor to act on in treating his patient. That circumstance was not shown here. Moreover, the record in *Jackson* was the hospital's record; here it is just the record of an outside laboratory.

Assuming a proper foundation was laid for a business record, it must be a business record which of itself contains the facts sought to be conveyed. Here, the business record is incomplete. Testimony would be needed to explain what defendant wishes it to show, i.e., that at 5:42 a.m. his blood alcohol content was 0.11 percent by weight, according to a judicially-recognized and objective scientific test conducted by a method which automatically and mechanically, produced that measurement without the necessity of expert opinion.

The court did not abuse its discretion in excluding it. Without even considering that the accuracy of the measurement, the reliability of the test, and the relevancy of the document (neither defendant nor anyone else testified that blood was drawn from him at 5:42 a.m.) could not be tested, which objections were not raised, the court did not abuse its discretion in excluding the document because it was not shown that its most crucial aspect was not a conclusion reached or an opinion drawn by the application of the tester's expertise.

I am authorized to state that Judge Johnson joins in this dissent.

DECIDED JULY 16, 1992 —
RECONSIDERATION DENIED JULY 31, 1992 —

*Frank J. Petrella*, for appellant.
*Robert E. Keller, District Attorney, Tracy G. Gladden, Assistant District Attorney*, for appellee.