### A95A1262. JENKINS v. THE STATE.
(465 SE2d 296)

RUFFIN, Judge.

Nadine Jenkins was convicted of voluntary manslaughter and

possession of a firearm during the commission of a felony. On appeal, she challenges both the admission and exclusion of certain trial evidence. Jenkins claims the court erred by admitting certain incriminating statements she made to the police without *Miranda* warnings and by excluding both the victim's blood alcohol report and expert witness testimony as to whether she acted in fear for her life. For reasons which follow, we affirm.

The evidence shows that during a domestic altercation, Jenkins shot her husband four times, once in the upper left chest, and three times in the back. Following the shooting, Jenkins telephoned 911 and reported the shooting. Officer Rosalyn Hall told the 911 dispatcher to call Jenkins back and tell her to stand in the driveway without the weapon and with her hands up. Officer Hall and Officer Howard Johnson arrived on the scene first. Officer Hall testified that when she arrived at the Jenkins' residence, Jenkins was standing in the driveway crying and waving her arms. She admitted shooting her husband and directed the police inside her home. Officer Hall testified she asked Jenkins only two questions — the location of the gun and her relationship to the victim. During the next several minutes, Officer Johnson and Jenkins, a registered nurse, jointly administered CPR to the victim. As they attempted to stabilize the victim, Jenkins, upset and praying, babbled incessantly about how she shot her husband, hoped he would not die, and questioning why he beat her all the time. Hall testified that during this time, Jenkins was not free to leave. Hall admitted she did not advise Jenkins of her rights and that she listened to all of Jenkins' statements. A short time later, Detective James McClenton arrived and after listening to Jenkins' statements, he read to her the *Miranda* rights. Jenkins gave no indication she understood her rights, and continued to talk as McClenton read the *Miranda* warnings to her.

The trial court conducted two *Jackson-Denno* hearings and admitted Jenkins' statements, finding them to be spontaneous and not the result of any police questioning.

1. Jenkins contends the court erred in allowing Officers Hall and McClenton to testify about her statements because at the time she made her statements she was in custody and had not been given *Miranda* warnings. Jenkins claims police should have given her *Miranda* warnings when they arrived on the scene but did not do so. Jenkins argues that police encouraged her to continue her narrative regarding the events that transpired and points out that McClenton allowed her to make a long detailed statement regarding the incident without ascertaining whether she understood her rights.

"[T]he necessity of administering *Miranda* warnings exists only when the individual is *interrogated* while in custody. [Cits.]" (Emphasis in original.) *Ramos v. State*, 198 Ga. App. 65, 66 (2) (400 SE2d

353) (1990). *"Miranda* warnings are not a prerequisite to the admission of evidence concerning voluntary statements not made in response to any form of custodial questioning or interrogation. [Cit.]" *Syfrett v. State*, 210 Ga. App. 185, 186 (3) (435 SE2d 470) (1993). Voluntary, spontaneous admissions made by a defendant prior to any interrogation are admissible at trial. *Smith v. State*, 264 Ga. 857 (3) (452 SE2d 494) (1995). Accordingly, we find that Jenkins' spontaneous outbursts, made in her front yard, that she shot her husband were admissible. No *Miranda* warnings are required unless and until the police commence questioning, and the record indicates the police asked only two questions while outside in her front yard — the location of the weapon and Jenkins' relationship to the victim.

As to Jenkins' subsequent statements made at her home before *Miranda* rights were given, she contends the statements were not voluntary because several officers told her that if she answered their questions, she would be allowed to go to the hospital to be with her husband. Jenkins also contends that she never knowingly and voluntarily waived her rights, even when she signed the waiver form, and consequently, any statements made after she was officially taken into custody should have been excluded. However, the record demonstrates that none of Jenkins' subsequent statements differed materially from her earlier admissions. Furthermore, although the transcript shows she was hysterical, continuously talking, and gave no indication of understanding her rights, McClenton testified that after Jenkins signed the waiver form, he was not able to obtain any intelligible information from her. Therefore, the trial court did not err in permitting Officers Hall and McClenton to offer essentially cumulative testimony. See generally *Lynn v. State*, 181 Ga. App. 461 (2) (352 SE2d 602) (1986).

2. Jenkins contends the trial court erred by excluding the victim's blood alcohol test results which purportedly showed the victim was legally intoxicated. Jenkins argues these data were essential to her defense of justification — that she reasonably feared for her life at the hands of her intoxicated husband and had suffered a sustained pattern of abuse culminating in his death. She argues that the trial court erred in failing to admit the report under the business record exception to the hearsay rule.

This court has determined that a blood alcohol test is admissible "when the party seeking to admit the test results lays a proper foundation by offering the testimony of a witness who is familiar with the method of record keeping, who can therefore testify that the entry of the test result was made in the regular course of business at the time the test was conducted or within a reasonable time thereafter. [Cits.] It is not necessary to have the person who performed the test or the person who ordered the test to testify, because the test results are

purely factual data." *Oldham v. State*, 205 Ga. App. 268, 270 (1) (422 SE2d 38) (1992).

In this case, however, Jenkins failed to lay any foundation for either the admission of the report or the expert's testimony regarding the test results contained in the report by showing that the witness was familiar with the method of record keeping or that he could testify that the entry of the test results was made in the regular course of business at the time the test was conducted or within a reasonable time thereafter. See id. Thus, we find no error in the exclusion of the report.

3. Jenkins claims the court erred by not permitting a defense expert witness to testify as to whether Jenkins shot her husband in fear for her life.

The court allowed the expert witness to testify that Jenkins was the victim of extensive psychological abuse, suffered from battered woman syndrome, and exhibited the symptoms of post traumatic stress disorder. Counsel was permitted to ask the expert witness whether at the time of the struggle Jenkins truly believed she was going to die. The court did not, however, allow counsel to ask: "And have you formed an opinion as to whether she at that time really believed that she was defending her life?" We agree the question was improper. Whether Jenkins shot her husband in self-defense and was defending her life is not a question outside the ken of the average juror. In *Pugh v. State*, 260 Ga. 874 (2) (401 SE2d 270) (1991), the Supreme Court affirmed the trial court's exclusion of a nearly identical question. Based on the Court's holding in *Pugh*, we find no merit in this enumeration.

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Blackburn and Smith, JJ., concur. Beasley, C. J., concurs in part and dissents in part.*

BEASLEY, Chief Judge, concurring in part and dissenting in part.

I concur in Divisions 1 and 2. With respect to Division 3, the question is not like the question which was ruled properly excluded in *Pugh v. State*, 260 Ga. 874, 875 (2) (401 SE2d 270) (1991).

In *Pugh*, the expert was not permitted to answer whether defendant shot her husband in self-defense. That was the ultimate question, as it is here, and the jury did not need the expert's opinion on that as though the expert was a thirteenth juror.

In this case, the expert held a doctorate in social psychology, was an expert on the battered woman syndrome, and had evaluated several hundred women in this regard. She evaluated defendant, using a number of diagnostic tools, and concluded that she "had and has a severe case of the battered woman syndrome" and also "a very strong case of the post traumatic stress disorder." Symptoms included: "a

great deal of fear for her life during her relationship with Mr. Jenkins," her husband. After extensive testimony, the question at issue was asked. The defendant sought to elicit the expert's opinion as to whether defendant believed, at the time of the shooting, that she was defending her life.

This is not the ultimate issue and is quite different from asking whether it was the expert's opinion that defendant shot the victim in self-defense. That was the properly excluded question in *Pugh*. The expert's training, experience, research, and extensively performed evaluation of defendant qualified her to reach an opinion on the state of defendant's mind at the time of the shooting. This was beyond the ken of the average juror, who would be hard pressed to draw their own conclusion as to the belief defendant held when she committed the act. Defendant was entitled to present the aid of the expert to assist the jury. *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981).

DECIDED DECEMBER 5, 1995 — 

*Robert L. Wadkins*, for appellant.
*Douglas C. Pullen, District Attorney, Roger H. Anderson, Assistant District Attorney*, for appellee.