## A97A0489. DIXON v. THE STATE.
(489 SE2d 532)

ANDREWS, Chief Judge.

Bobby Ray Dixon was found guilty by a jury on two counts of driving a moving vehicle while under the influence of alcohol. In Count 1, he was found guilty of being under the influence to the extent it was less safe for him to drive (OCGA § 40-6-391 (a) (1)), and in Count 2, he was found guilty of driving with an unlawful alcohol concentration level in his blood (OCGA § 40-6-391 (a) (4)). The trial court merged Count 2 into Count 1 and sentenced Dixon only on Count 1. Dixon appeals from the judgment entered on the conviction.

The State produced evidence that, while Dixon was riding his motorcycle, he collided with another vehicle and was seriously injured. He was taken from the scene of the accident by helicopter to a hospital for medical treatment. A nurse on the hospital trauma team that initially assessed and treated Dixon upon his arrival at the hospital testified that there was a strong odor of alcohol about Dixon's person and on his breath. In order to determine the amount of alcohol in Dixon's system for the purpose of rendering medical treatment, blood was drawn from Dixon and tested for alcohol content by the hospital's laboratory. A hospital record of the blood test result was admitted into evidence showing Dixon's alcohol level at ".21." The trauma team physician who treated Dixon upon his arrival at the hospital gave testimony establishing that the test results indicated a blood alcohol concentration of .21 grams percent. In addition, the State presented testimony from the trauma team nurse and physician that, in their expert opinions, Dixon was under the influence of alcohol upon his arrival at the hospital to the extent that his motor abilities and reaction time were impaired by alcohol.

1. The evidence was sufficient to allow the jury to conclude that Dixon was under the influence of alcohol to the extent that he was a less safe driver under Count 1. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Animashaun v. State*, 216 Ga. App. 104, 105-106 (453 SE2d 126) (1995); *Dudley v. State*, 204 Ga. App. 327 (419 SE2d 138) (1992).

2. In his first enumeration of error, Dixon claims the trial court erred by charging the jury pursuant to OCGA § 40-6-392 (b) (3) on the permissive inference that may be drawn that a person was under the influence of alcohol and, therefore, a less safe driver as prohibited

by OCGA § 40-6-391 (a) (1), based on evidence showing an alcohol concentration of 0.08 grams or more in the person's blood. See *Holcomb v. State*, 217 Ga. App. 482, 484-485 (458 SE2d 159) (1995); *Ellerbee v. State*, 215 Ga. App. 102, 104-105 (449 SE2d 874) (1994). He claims the inference allowed under OCGA § 40-6-392 (b) (3) does not apply to the hospital-administered blood test introduced by the State because that test was not done in compliance with the procedures for administration of tests set forth in OCGA § 40-6-392 (a).

Subsection (a) of OCGA § 40-6-392 requires compliance with certain procedures before a test will be considered valid under the Code section. The procedures for conducting valid tests set forth in subsection (a) were designed by the legislature as safeguards to minimize the possibility of erroneous results in tests administered by the State for the purpose of showing that a person was in violation of OCGA § 40-6-391. *Lattarulo v. State*, 261 Ga. 124, 126-127 (401 SE2d 516) (1991); *Jackson v. State*, 196 Ga. App. 724, 726 (397 SE2d 13) (1990). These procedures apply only to State-administered tests and not to alcohol level tests administered by a hospital for the purpose of assisting in a person's medical treatment. Id. at 726; *Bynum v. Standard (Chevron) Oil Co.*, 157 Ga. App. 819, 820 (278 SE2d 669) (1981).

It is clear, however, that, in addition to State-administered alcohol level tests, tests to determine alcohol level not performed at the request or direction of the State, like the hospital-administered test in this case, may also be admitted pursuant to the applicable rules of evidence as proof of alcohol concentration levels in criminal or civil cases. *Oldham v. State*, 205 Ga. App. 268, 269 (422 SE2d 38) (1992); *Bynum*, supra. In reference to these tests, subsection (b) of OCGA § 40-6-392 provides that, except as to certain provisions of OCGA § 40-6-391 relating to commercial vehicles, "upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person in violation of Code Section 40-6-391, the amount of alcohol in the person's blood at the time alleged, as shown by chemical analysis of the person's blood, urine, breath, or other bodily substance, shall give rise to the following presumptions. . . ." Although subsection (b) is worded in terms of a presumption, it "actually has the effect of defining the level of blood-alcohol that is sufficient to permit an inference that the driver is 'under the influence.'" *Lattarulo*, supra at 125 (1). Nothing in subsection (b) of the statute limits its application to the State-administered tests which must comply with the procedures set forth in subsection (a) of the statute. Accordingly, it is not necessary that a blood alcohol level test administered by a hospital in providing medical treatment be performed in compliance with the procedures of OCGA § 40-6-392 (a) in order to be considered a valid test for the purpose of applying the inferences permitted under OCGA § 40-6-392 (b).

The trial court did not err in charging the jury on the permissive inference set forth in OCGA § 40-6-392 (b) (3).

3. Dixon's second and third enumerations of error both concern alleged errors relating to the guilty verdict on Count 2. Since the trial court merged the conviction on Count 2 with the Count 1 conviction and sentenced Dixon only on Count 1, the Count 2 conviction stands vacated by operation of law, and Dixon's enumerations as to Count 2 are moot. *Wade v. State*, 258 Ga. 324, 326 (368 SE2d 482) (1988).

4. In his final enumeration of error, Dixon contends the trial court erred by admitting the hospital record showing the test results of the hospital-administered test of his blood alcohol level. He objected at trial and argues on appeal in support of this enumeration that: (1) the trial court erred by admitting the hospital record under the business record exception to the hearsay rule because the State failed to lay a proper foundation, and (2) admission of the hospital record as evidence of the test results denied him his Sixth Amendment right of confrontation.

The State laid a proper foundation for admission of the document as a business record pursuant to OCGA § 24-3-14. The document was a computer printout of the test results which were electronically stored in the hospital's computer system. A nurse on the hospital trauma team which ordered the blood alcohol test testified that, when the test was completed by the hospital laboratory, the test results were entered into the hospital's computer system and stored there in the normal course of business. She testified that it was normal procedure for the electronically stored test results to be entered and ready for printout within 20 to 30 minutes of completion of the test. She identified the document reflecting the test result as a computer printout of the test results for Dixon, which had been entered and stored in the hospital's computer system.

Moreover, the record reflects that the computer printout of the test results contained only objective, factual data generated as the product of routine, mechanical tests commonly employed by certified medical technologists in the hospital's accredited laboratory. Since the test results were not generated as the result of opinions or conclusions of third parties not before the court, it was not necessary to produce additional foundation testimony from those parties. Compare *Malcolm v. State*, 263 Ga. 369, 370-371 (434 SE2d 479) (1993); *Moody v. State*, 244 Ga. 247, 249 (260 SE2d 11) (1979); *Spivey v. State*, 184 Ga. App. 118 (361 SE2d 9) (1987).

There is no merit to Dixon's additional claim that it was error to admit along with the document showing the test results a certification by the hospital's records custodian that the document was a true and accurate reproduction of the original record. If anything, this provided an additional foundation for admission of the document

pursuant to OCGA § 24-7-8. *McCall v. Parker*, 177 Ga. App. 774, 775 (341 SE2d 303) (1986).

The trial court did not err in finding a sufficient foundation for admission of the hospital record as a business record exception to the hearsay rule pursuant to OCGA § 24-3-14. *Morris v. Nat. Western Life Ins. Co.*, 208 Ga. App. 443, 444 (430 SE2d 813) (1993); *WGNX, Inc. v. Gorham*, 185 Ga. App. 489, 490-491 (364 SE2d 621) (1988); *Spivey*, supra.

Dixon also claims that admission of the hospital record showing the blood alcohol test result violated his right under the Confrontation Clause embodied in the Sixth Amendment to confront and cross-examine the person or persons who did the testing.

The Confrontation Clause guarantees a criminal defendant the right to encounter and cross-examine the witnesses against him under the Sixth Amendment to the U. S. Constitution. *Higgs v. State*, 256 Ga. 606, 608 (351 SE2d 448) (1987). " 'The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' *Maryland v. Craig*, 497 U. S. 836, 845 (110 SC 3157, 111 LE2d 666) (1990)." *Miller v. State*, 266 Ga. 850, 853 (472 SE2d 74) (1996). Thus, the admission of the hospital record under the business record exception to the hearsay rule to prove the result of the blood alcohol test, without giving Dixon an opportunity to confront and cross-examine the person who performed the test, would appear on its face to violate the Confrontation Clause guarantee. The U. S. Supreme Court, however, has refused to interpret the Confrontation Clause literally as an absolute bar to the admission of evidence under exceptions to the hearsay rule. *Idaho v. Wright*, 497 U. S. 805, 813-814 (110 SC 3139, 111 LE2d 638) (1990); *Miller*, supra at 853.

In *Ohio v. Roberts*, 448 U. S. 56, 66 (100 SC 2531, 65 LE2d 597) (1980), the Court held that, "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Roberts* and subsequent decisions have recognized that the business records exception is such a firmly rooted hearsay exception. Id. at 66, n. 8; *United States v. Ismoila*, 100 F3d 380, 392 (5th Cir. 1996); *United States v. Norton*, 867 F2d 1354, 1363 (11th Cir. 1989); *Brown v. State*, 268 Ga. 76 (485 SE2d 486) (1997). Moreover, it is not necessary under the firmly rooted business records exception to establish the unavailability of the hearsay

declarant. See *United States v. Roulette*, 75 F3d 418, 422 (8th Cir. 1996); *Norton*, supra at 1363; compare *White v. Illinois*, 502 U. S. 346, 354-357 (112 SC 736, 116 LE2d 848) (1992); *United States v. Inadi*, 475 U. S. 387, 399-400 (106 SC 1121, 89 LE2d 390) (1986); *Miller*, supra at 854; *Barnett v. State*, 211 Ga. App. 651, 652 (440 SE2d 247) (1994).

Under circumstances similar to the present case, we have found that the results of blood tests to determine a defendant's alcohol concentration level administered by a hospital to provide medical treatment for the defendant were admissible pursuant to OCGA § 24-3-14, upon proper foundation testimony, as business record exceptions to the hearsay rule without testimony from the persons performing the tests. *Oldham*, supra; *Jackson v. State*, supra at 725-726; see *Bynum*, supra at 820-821. Under OCGA § 24-3-14, such test results, like the test results in the present case, were recognized as the inherently reliable products of routine, mechanical testing by the hospitals comprising purely factual data maintained by the hospitals in the regular course of business and containing no opinions or conclusions of third parties not before the court.

" '(W)here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied. . . . (A) statement that qualifies for admission under a "firmly rooted" hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability. (Cit.) . . .' [*White*, supra,] 116 LE2d at 859-860." *Barnett*, supra at 652. Because the hospital record showing Dixon's blood test results was properly admitted pursuant to OCGA § 24-3-14 as a business records exception to the hearsay rule, it bore an "indicia of reliability" sufficient to satisfy the Confrontation Clause. See *Brown*, supra.

The trial court correctly denied Dixon's objection to admission of the hospital record on the basis of the Sixth Amendment Confrontation Clause.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED JUNE 27, 1997 —
RECONSIDERATION DENIED JULY 24, 1997 — ▮▮▮▮▮▮

*Larry W. Yarbrough*, for appellant.

*Benjamin F. Smith, Jr., Solicitor, Barry E. Morgan, Rebecca A. Hulsey, Assistant Solicitors*, for appellee.